# EXHIBIT 3

<u>SETTLEMENT AGREEMENT</u>

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program (collectively, the "United States"), Health Management Associates, Inc., now known as Health Management Associates, LLC, its subsidiaries and affiliates, and its parent ("HMA Parent") (collectively, "HMA"), and Relators Craig Brummer, M.D., Ralph Williams, Scott Plantz, M.D., Thomas L. Mason, M.D., Steven G. Folstad, M.D., Mid-Atlantic Emergency Medical Associates, Jacqueline Meyer, J. Michael Cowling, and Paul Meyer (collectively, the "Relators"), through their authorized representatives. Relators Mason, Folstad, and Mid-Atlantic Emergency Medical Associates are collectively referred to herein as the "MEMA Relators." Collectively, all of the above will be referred to as "the Parties."

<u>RECITALS</u>

A.     Health Management Associates, Inc. is a for-profit health care system that, during the relevant period, through its subsidiaries, indirectly owned and/or operated hospitals throughout the United States. HMA Parent, a Delaware corporation with its principal place of business in Franklin, Tennessee, acquired Health Management Associates, Inc., now known as Health Management Associates, LLC in January 2014.

B.     On November 24, 2009, Relator Craig Brummer, M.D. filed a *qui tam* action in the United States District Court for the Northern District of Georgia, captioned *United States ex rel. Brummer v. Health Management Associates, Inc., et al.,* No. 1:09-CV-3287 (N.D. Ga.), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). On December

14, 2009, Relator's motion to transfer venue to the Middle District of Georgia was granted. The case was assigned case number Civil Action No. 3:09-CV-135 (CDL) following its transfer to the Middle District of Georgia (the "Brummer Civil Action"). On December 16, 2013, the United States intervened in the Brummer Civil Action.

C.     On December 1, 2009, Relator Ralph D. Williams filed a *qui tam* action in the United States District Court for the Middle District of Georgia, captioned *United States ex rel. Williams v. Health Mgmt. Assocs., et al.,* No. 3:09-CV-130 (CDL), pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). On November 30, 2012, Relator Williams severed certain claims, and filed a separate complaint with respect to the severed claims, captioned *United States ex rel. Williams v. Health Mgmt. Assocs., et al.,* No. 3:12-CV-151 (CDL) (the "Williams Civil Action"). On December 16, 2013, the United States intervened in the Williams Civil Action.

D.     On February 11, 2010, Relator Scott H. Plantz, M.D. filed a *qui tam* action in the United States District Court for the Northern District of Illinois, captioned *United States ex rel. Plantz v. Health Management Associates, et al.,* Case No. 10C 0950, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b). On February 14, 2013, Relator Plantz filed his severed complaint against the HMA defendants and ProMed, which was assigned Case No. 13 C 1212 (the "Plantz Civil Action"). On December 16, 2013, the United States intervened in the Plantz Civil Action with regard to certain claims against the HMA defendants.

E.     On September 23, 2010, Relators Thomas Mason, M.D., Stephen Folstad, M.D. and their medical practice Mid-Atlantic Emergency Medical Associates ("MEMA") filed a *qui tam* action in the United States District Court for the Western District of North Carolina, captioned *United States ex rel. Mason, Folstad & MEMA v. Health Mgmt. Assocs., et al.,* No. 3:10-cv-472, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b)

(the "MEMA Civil Action"). On April 18, 2011, the MEMA Relators filed their sealed First Amended Complaint. On April 12, 2012, the MEMA Relators filed their sealed Second Amended Complaint. At the United States' request, the MEMA Relators severed certain claims and filed their Severed Second Amended Complaint on January 9, 2013. On December 16, 2013, the United States intervened in the MEMA Civil Action with regard to certain claims against the HMA defendants.

F. On July 15, 2011, Relators Jacqueline Meyer and J. Michael Cowling filed a *qui tam* action in the United States District Court for the District of South Carolina, captioned *United States ex rel. Meyer and Cowling v. Health Mgmt. Assocs., et al.*, No. 0-11-cv-01713-JA, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Meyer and Cowling Civil Action"). On December 16, 2013, the United States intervened in the Meyer and Cowling Civil Action with regard to certain claims against the HMA defendants.

G. On November 15, 2011, Relator Paul Meyer filed a *qui tam* action in the United States District Court for the Southern District of Florida, captioned *United States ex rel. Paul Meyer v. Health Management Associates, Inc., et al.,* Civil Action No. 11-62445, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Paul Meyer Civil Action"). On December 16, 2013, the United States intervened in the Paul Meyer Civil Action.

H. The Brummer, Williams, Plantz, MEMA, Meyer and Cowling, and Paul Meyer Civil Actions are hereafter collectively referred to as "the Civil Actions."

I. On January 14, 2014, the United States filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate the Civil Actions with three other False Claims Act *qui tam* actions. On April 2, 2014, the Judicial Panel on Multidistrict Litigation granted the United States' motion and assigned the cases to the Honorable Reggie Walton, United States District Judge for the District of the District of Columbia, for pre-trial proceedings. The HMA MDL is

Miscellaneous Action No. 14-0339 (RBW), MDL Docket No. 2524. Within the MDL, the Brummer Civil Action is assigned Case No. 1:14-cv-00573-RBW, the Williams Civil Action is assigned Case No.1:14-cv-00574-RBW, the Plantz Civil Action is assigned Case No. 1:14-cv-00653-RBW, the MEMA Civil Action is assigned Case No. 1:14-cv-00579-RBW, the Meyer and Cowling Civil Action is assigned Case No. 1:14-cv-00586-RBW, and the Paul Meyer Civil Action is assigned Case No. 1:14-cv-00585-RBW.

J.     The United States contends that HMA hospitals submitted claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 ("Medicare"), the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5 ("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE") (collectively "Government Healthcare Programs").

K.     In order to resolve claims asserted pursuant to state law in the Civil Actions, HMA will be entering into separate settlement agreements (the "Medicaid State Settlement Agreements") with certain states. The states that enter into settlement agreements with HMA (the "Medicaid Participating States") will be receiving settlement funds from HMA pursuant to Paragraph 1 below.

L.     <u>Covered Conduct</u>: The United States contends that it has certain civil claims against HMA arising from the conduct described in this Recital L.1, L.2, L.3 and L.4 at the hospitals listed and during the time periods specified on Attachments A, B, and C (hereinafter referred to as the "Covered Conduct"):

1.     <u>Medically Unnecessary Emergency Department Admissions</u>

The United States contends that, from January 1, 2008 through December 31, 2012, HMA hospitals submitted claims for payment to the Government Healthcare Programs for certain inpatient admissions of Government Healthcare Program beneficiaries that were

medically unnecessary and should have been billed as outpatient or observation services. HMA discouraged the use of outpatient and observation status for emergency department ("ED") patients in favor of higher-paying inpatient admissions. HMA pressured ED physicians and physician staffing groups to increase inpatient admissions by recommending admission to admitting physicians without regard to medical necessity. The Covered Conduct in this Recital L.1 is specifically limited to claims submitted by the HMA hospitals listed on Attachment A hereto during the time periods listed therein that were related to the inpatient admission and treatment of Government Healthcare Program beneficiaries that meet all of the following criteria:

(a)    For beneficiaries who originally presented to the ED of the HMA hospitals;

(b)    For beneficiaries whose length of stay after inpatient admission was two (2) days or less;

(c)    For beneficiaries who were 65 years or older at the time they originally presented to the ED of an HMA hospital;

(d)    For beneficiaries who were not transferred or discharged to another acute care facility, did not leave the HMA hospital to which they originally presented against medical advice, and did not die while in a HMA hospital; and

(e)    That were billed to the Government Healthcare programs under one of the following Medical Severity DRGs ("MS-DRGs"):

(i)    MS-DRG 069 (transient ischemia); 149 (disequilibrium), 192 (chronic obstructive pulmonary disease without CC/MCC); 195 (simple pneumonia and pleurisy without CC/MCC), 203 (bronchitis and asthma without CC/MCC), 204 (respiratory signs and symptoms), 293 (heart failure and shock without CC/MCC); 303

(atherosclerosis without MCC), 305 (hypertension without MCC), 310 (cardiac arrhythmia & conduction disorder without CC/MCC); 312 (syncope and collapse); 313 (chest pain); 392 (esophagitis, gastroenteritis and miscellaneous digestive disorders without MCC); 639 (diabetes without CC/MCC), 641 (nutritional and miscellaneous metabolic disorders without MCC); 690 (kidney and urinary tract infections without MCC), 812 (red blood cell disorders without MCC) and 948 (signs and symptoms without MCC).

(ii) For hospitals acquired by HMA during the covered period of January 1, 2008 through December 31, 2012, claims for services rendered 365 days after the facility was acquired by HMA through December 31, 2012. The relevant time period for each HMA hospital is listed on Attachment A.

(f) For Medicare claims only, inpatient admissions billed and paid under fee for service Medicare Part A, where Medicare was the primary payor of the claim and the claim resulted in payment by Medicare.

(g) For Medicaid claims only, inpatient admissions of Medicare-Medicaid dual eligible patients billed and paid under fee for service Medicare Part A and the Medicaid program of one of the States, and the claim resulted in payment by Medicaid.

(h) For TRICARE claims only, inpatient admissions of Medicare-TRICARE dual eligible patients billed and paid under fee for service Medicare Part A and TRICARE, and the claim resulted in payment by TRICARE.

2. <u>Violations of the Medicare and Medicaid Anti-Kickback Statute Relating to Medically Unnecessary Emergency Department Admissions</u>

The United States contends that HMA offered and provided remuneration to EmCare, a physician staffing company, in the form of service contracts and payments, in return for ED physician inpatient admission recommendations of Government Healthcare Program beneficiaries made without regard to the medical necessity of admission, in violation of the Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b). The illegal remuneration included the award of service contracts, the retention of service contracts that HMA threatened to terminate unless ED admissions increased, payments under the HMA-EmCare hospital ED physician and hospitalist contracts, and bonus payments made to ED physicians where the bonuses were tied, in part, to meeting numerical targets for the percentage of attending physicians called by the ED physician. The Covered Conduct in this Recital L.2 is specifically limited to claims submitted by the HMA hospitals that are listed on Attachments B and C during the time periods listed therein.

      3.     <u>Overbilling of Emergency Department Acuity Levels</u>

The United States contends that, from January 1, 2009 through December 31, 2011, HMA manipulated acuity points, and the HMA hospitals submitted claims to Medicare Part B and Medicaid for falsely inflated Emergency Department facility charges billed using evaluation and management CPT codes 99281-99285 and 99191-99292. The Covered Conduct in this Recital L.3 is specifically limited to claims submitted by the HMA hospitals listed on Attachment A for the time period January 2009 through December 2011.

      4.     <u>Stark Law Claims</u>

The United States contends that Crossgates River Oaks Hospital f/k/a Rankin Medical Center, an HMA-owned facility in Brandon, Mississippi, leased space to Dr. Lucius F. Sams III, M.D., from January, 15, 2005 through January 14, 2007, but required Dr. Sams to pay

rent for only half of the space he was actually occupying, allegedly in return for patient referrals to Crossgates River Oaks Hospital. The Covered Conduct in this Recital L.4 is specifically limited to claims submitted by Crossgates River Oaks Hospital during the period January 2005 through January 2007.

M.    Except to the extent admitted in the guilty plea of Carlisle HMA, LLC or in the Statement of Facts in support of the Non-Prosecution Agreement (NPA) entered into between Health Management Associates, LLC and the United States, HMA denies the allegations and contentions of the United States and Relators.

N.    This Settlement Agreement is neither an admission of liability by HMA nor a concession by the United States or Relators in the Civil Actions that their claims are not well founded.

O.    Relators claim entitlement under 31 U.S.C. § 3730(d) and analogous provisions of state false claims laws to a share of the proceeds of this Settlement Agreement, the Medicaid State Settlement Agreements, and to each Relator's reasonable expenses, attorneys' fees and costs. Relators intend to argue that 31 U.S.C. § 3730(b)(5), 31 U.S.C. § 3730(e), or other provisions have no effect on Relators' entitlement to an award of expenses, attorneys' fees, and costs.

P.    HMA denies that each of the Relators is entitled to expenses, attorneys' fees, and costs. HMA intends to argue that provisions in the False Claims Act, including but not limited to 31 U.S.C. § 3730(b)(5) and 3730(e), bar one or more Relators from receiving an award of expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

## TERMS AND CONDITIONS

1.     HMA shall pay to the United States and the Medicaid Participating States,
collectively, the sum of seventy-four million, nine hundred seventy thousand, eight hundred and
two dollars ($74,970,802) ("Settlement Amount"). Of the Settlement Amount, $62,545,802 is
allocated to settle the United States' and the Medicaid Participating States' claims described in
Recitals L.1 and L.2, $12,000,000 is allocated to settle the United States' and the Medicaid
Participating States' claims described in Recital L.3, and $425,000 is allocated to settle the
United States' claims described in Recital L.4. Interest on the Settlement Amount shall accrue at
an annual rate of 2.250% from September 1, 2017, and shall be proportionately allocated by the
United States to the claims identified in this paragraph. The Settlement Amount shall constitute
a debt immediately due and owing to the United States and the Medicaid Participating States on
the Effective Date of this Agreement. This debt shall be discharged by payments to the United
States and the Medicaid Participating States, under the following terms and conditions:

     a.     HMA shall pay to the United States the sum of $73,292,717.95, of which
$36,715,032 is restitution to the United States, plus accrued interest as set
forth above ("Federal Settlement Amount"). The Federal Settlement
Amount shall be paid to the United States no later than 10 business days
after the Effective Date of this Agreement by electronic funds transfer
pursuant to written instructions to be provided by the Civil Division of the
United States Department of Justice; and

     b.     No later than 10 business days after the Effective Date of this Agreement,
HMA shall pay the sum of $1,678,084.05, of which $839,042.02 is
restitution to the States, plus accrued interest as set forth above ("Medicaid
State Settlement Amount") pursuant to written instructions from the

NAMFCU Negotiating Team and under the terms and conditions of the Medicaid State Settlement Agreements that HMA will enter into with the Medicaid Participating States.

2.     Subject to the exceptions in Paragraph 11 (concerning excluded claims) below, and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), the United States releases HMA, together with its current and former parent corporations, partnerships, joint ventures, limited liability company owners and other parent entities; direct and indirect subsidiaries; brother or sister corporations, and other HMA-owned entities; divisions; affiliates; current or former corporate partnerships, joint ventures and limited liability companies; and the successors and assigns of any of them (collectively, the "HMA Releasees") from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, disgorgement, and fraud.

3.     Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims), and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), Relator Craig Brummer, M.D., for himself and for his heirs, successors, attorneys, agents, and assigns, releases the HMA Releasees and their officers, directors, agents, employees, and assigns from any civil monetary claim related to the Brummer Civil Action that the Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except

that Relator Brummer does not waive or release his entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees, and costs.

4.      Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims), and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), Relator Ralph D. Williams, for himself and for his heirs, successors, attorneys, agents, and assigns, releases the HMA Releasees and their officers, directors, agents, employees, and assigns from any civil monetary claim related to the Williams Civil Action that the Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except that Relator Williams does not waive or release his entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees, and costs.

5.      Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims) below, and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), Relator Scott H. Plantz, M.D., for himself and for his heirs, successors, attorneys, agents, and assigns, releases the HMA Releasees and their officers, directors, agents, employees, and assigns from any civil monetary claim related to the Plantz Civil Action that the Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except that Relator Plantz does not waive or release his entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees and costs.

6.      Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims), and conditioned upon HMA's full payment of the Federal Settlement Amount, plus

accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), Relators Thomas Mason, M.D., Stephen Folstad, M.D. and their medical practice, MEMA, for themselves and for itself, and for their respective heirs, successors, attorneys, agents, and assigns, release the HMA Releasees and their officers, directors, agents, employees, and assigns from any civil monetary claim related to the MEMA Civil Action that the MEMA Relators have on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except that the MEMA Relators do not waive or release their entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees and costs.

7.    Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims), and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this Agreement), Relators Jacqueline Meyer and Michael Cowling, for themselves, and for their respective heirs, successors, attorneys, agents, and assigns, release the HMA Releasees and their officers, directors, agents, employees, and assigns with the exception of former HMA CEO Gary Newsome, from any civil monetary claim related to the Meyer and Cowling Civil Action that the Relators have on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except that Relators do not waive or release their entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees and costs.

8.    Subject to the exceptions in Paragraphs 11 and 13 below (concerning excluded claims), and conditioned upon HMA's full payment of the Federal Settlement Amount, plus accrued interest, and subject to Paragraph 23 below (concerning bankruptcy proceedings commenced after the Effective Date of this Agreement or any payment made under this

Agreement), Relator Paul Meyer for himself and for his heirs, successors, attorneys, agents, and assigns, releases the HMA Releasees and their officers, directors, agents, employees, and assigns from any civil monetary claim related to the Meyer Civil Action that Relator has on behalf of the United States under the False Claims Act, 31 U.S.C. §§ 3729-3733, except that Relator does not waive or release his entitlement under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees and costs.

9. In consideration of the obligations of HMA in this Agreement and the Corporate Integrity Agreement (CIA) entered into between OIG-HHS and HMA Parent, and conditioned upon HMA's full payment of the Federal Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against HMA under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 11 (concerning excluded claims), below. The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude HMA from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory exclusion) based upon the Covered Conduct. Nothing in this Paragraph precludes the OIG-HHS from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 11, below, and as reserved in this Paragraph.

10. In consideration of the obligations of HMA set forth in this Agreement, and conditioned upon HMA's full payment of the Federal Settlement Amount, DHA agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from the TRICARE Program against HMA under 32 C.F.R. § 199.9 for the Covered

Conduct, except as reserved in this Paragraph and in Paragraph 11 (concerning excluded claims), below. DHA expressly reserves authority to exclude HMA from the TRICARE Program under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based upon the Covered Conduct. Nothing in this Paragraph precludes DHA or the TRICARE Program from taking action against entities or persons, or for conduct and practices, for which claims have been reserved in Paragraph 11, below.

11.     Notwithstanding the releases given in paragraphs 2, 9 and 10 of this Agreement or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

     a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

     b.     Any criminal liability;

     c.     Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

     d.     Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

     e.     Any liability based upon obligations created by this Agreement;

     f.     Any liability of any other defendants named in the Plantz, MEMA, or Meyer and Cowling Civil Actions; and

     g.     Any liability of individuals.

12.     Relators and their respective heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B), and that the allocations of the Settlement Amount for each individual claim outlined in Paragraph 1 and as previously disclosed to Relators are also fair, adequate, and reasonable under all the

circumstances. In connection with this Agreement and the Civil Actions, Relators and their respective heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, prior intervention by the United States in the Civil Actions, nor any dismissal of claims in the Civil Actions, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar any of the Relators from sharing in the proceeds of this Agreement. Moreover, the United States and Relators and their respective heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act on the issue of the share percentage, if any, that any of the Relators should receive of any proceeds of the settlement of their respective claims, and that no agreements between any Relator and the United States concerning Relator share have been reached to date, other than the allocations of the Settlement Amount as stated above in Paragraph 1.

13.     Each Relator, for himself, herself, or itself, and for his, her, or its respective heirs, successors, attorneys, agents, and assigns, fully and finally releases the HMA Releasees, and their officers, directors, agents, employees, and assigns from any liability accruing prior to the Effective Date of this Agreement to that Relator arising from the filing of his, her or their Civil Action, and from any claims (including indemnification), allegations, demands, actions or cause of action whatsoever, known or unknown, fixed or contingent, in law or in equity, in contract or in tort, under any federal or state statute or regulation, or under common law, accruing prior to the Effective Date of this Agreement, that each Relator, his, her or their respective heirs, successors, attorneys, agents and assigns otherwise would have standing to bring, have asserted, could have asserted, or may assert in the future against the HMA Releasees, including, without limitation, any claim related to each Relator's respective Civil Action and each Relator's

respective investigation and prosecution of his or her or their Civil Action. However, the following claims are specifically reserved and not released:

    a.    Each Relator's claims under 31 U.S.C. § 3730(d) and analogous state FCA statutes for expenses, attorneys' fees and costs;

    b.    The MEMA Relators' claims for damages, expenses, attorneys' fees and costs under 31 U.S.C. § 3730(h) and under N.C. Gen. Stat. § 1-613;

    c.    Claims that the MEMA Relators have filed against HMA for damages, attorney's fees, and costs in Counts X through XII of the MEMA Relators' Severed Second Amended Complaint;

    d.    Relator Jacqueline Meyer's claims against HMA for damages, expenses, attorneys' fees, and costs under 31 U.S.C. § 3730(h) and for tortious interference with a business relationship; and

    e.    Relators Jacqueline Meyer and Michael Cowling's claims against Gary Newsome alleged in Counts One through Nine of the Meyer and Cowling Civil Action.

14.    HMA waives and shall not assert any defenses HMA may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

15.    HMA fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that HMA has asserted, could have asserted, or may assert

in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

16.     HMA, its successors, attorneys, and agents, and HMA Releasees fully and finally release each Relator (including his/her, their, or its attorneys, agents, employees, successors, family members, and heirs) from any claims (including, for example, indemnification, attorneys' fees, costs, and expenses of every kind and however denominated) that HMA has asserted, could have asserted, or may assert in the future against each Relator, including, without limitation, any claim related to the Civil Actions and each Relator's investigation and prosecution thereof. In keeping with Recitals O and P above, HMA and Relators and their respective heirs, successors, attorneys, agents, and assigns agree that they each retain all of their rights pursuant to the False Claims Act and have not, through this Agreement, waived any of their rights on the issue of whether a Relator is entitled to and, if so, the amount of an award of expenses, attorneys' fees, and costs, and that no agreements concerning entitlement to or the amounts of expenses, attorneys' fees, and costs have been reached to date between HMA and any Relator.

17.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or TRICARE contractor or any state payer, related to the Covered Conduct; and HMA agrees not to resubmit to any Medicare or TRICARE contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

18.     HMA agrees to the following:

   a.     Unallowable Costs Defined: All costs (as defined in the Federal

           Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and

XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of HMA, HMA's present or former officers, directors, employees, shareholders, and agents in connection with:

(1)     the matters covered by this Agreement, the Carlisle HMA, LLC plea agreement, and the NPA between Health Management Associates, LLC and the United States;

(2)     the United States' audits and civil and criminal investigations of the matters covered by this Agreement;

(3)     HMA's investigation, defense, and corrective actions undertaken in response to the United States' audits and civil and criminal investigations in connection with the matters covered by this Agreement (including attorneys' fees);

(4)     the negotiation and performance of this Agreement, the Carlisle HMA, LLC plea agreement, and the NPA between Health Management Associates, LLC and the United States;

(5)     the payment HMA makes to the United States pursuant to this Agreement and any payments that HMA may make to the Relators, including costs and attorneys' fees; and

(6)     the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS,

are unallowable costs for government contracting purposes and under the Medicare

Program, Medicaid Program, TRICARE Program, and Federal Employees Health

Benefits Program (FEHBP) (hereinafter referred to as Unallowable Costs). However,

nothing in paragraph 18 a.(6) that may apply to the obligations undertaken pursuant to the

CIA affects the status of costs that are not allowable based on any other authority

applicable to HMA.

    b.    <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be

separately determined and accounted for in nonreimbursable cost centers

by HMA, and HMA shall not charge such Unallowable Costs directly or

indirectly to any contracts with the United States or any State Medicaid

program, or seek payment for such Unallowable Costs through any cost

report, cost statement, information statement, or payment request

submitted by HMA or any of its subsidiaries or affiliates to the Medicare,

Medicaid, TRICARE, or FEHBP Programs.

    c.    <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:

HMA further agrees that within 90 days of the Effective Date of this

Agreement it shall identify to applicable Medicare and TRICARE fiscal

intermediaries, carriers, and/or contractors, and Medicaid and FEHBP

fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any

State Medicaid program, including, but not limited to, payments sought in

any cost reports, cost statements, information reports, or payment requests

already submitted by HMA, or any of its subsidiaries or affiliates, and

shall request, and agree, that such cost reports, cost statements,

information reports, or payment requests, even if already settled, be

adjusted to account for the effect of the inclusion of the Unallowable

Costs. HMA agrees that the United States, at a minimum, shall be entitled

to recoup from HMA any overpayment plus applicable interest and

penalties as a result of the inclusion of such Unallowable Costs on

previously-submitted cost reports, information reports, cost statements, or

requests for payment.

Any payments due after the adjustments have been made shall be paid to the United

States pursuant to the direction of the Department of Justice and/or the affected agencies.

The United States reserves its rights to disagree with any calculations submitted by HMA

or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as

defined in this Paragraph) on HMA or any of its subsidiaries or affiliates' cost reports,

cost statements, or information reports.

     d.    Nothing in this Agreement shall constitute a waiver of the rights of the

United States to audit, examine, or re-examine HMA's books and records

to determine that no Unallowable Costs have been claimed in accordance

with the provisions of this Paragraph.

19.    HMA agrees to cooperate fully and truthfully with the United States'

investigation of individuals and entities not released in this Agreement. Upon reasonable notice,

HMA shall encourage, and agrees not to impair, the cooperation of its directors, officers, and

employees, and shall use its best efforts to make available, and encourage, the cooperation of

former directors, officers, and employees for interviews and testimony, consistent with the rights

and privileges of such individuals. HMA further agrees to furnish to the United States, upon

request, complete and unredacted copies of all non-privileged documents, reports, memoranda of

interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

20.     This Agreement is intended to be for the benefit of the Parties only.  The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 21 (waiver for beneficiaries paragraph), below.

21.     HMA agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

22.     HMA warrants that it has reviewed its financial situation and that it is currently solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount.  Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to HMA within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange.  Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which HMA was or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

23.     If HMA commences, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of HMA's debts, or seeking to adjudicate HMA as bankrupt

or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for HMA or for all or any substantial part of HMA's assets, HMA agrees as follows:

a. HMA's obligations under this Agreement may not be avoided pursuant to 11 U.S.C. § 547, and HMA shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) HMA's obligations under this Agreement may be avoided under 11 U.S.C. § 547; (ii) HMA was insolvent at the time this Agreement was entered into, or became insolvent as a result of the payment made to the United States; or (iii) the mutual promises, covenants, and obligations set forth in this Agreement do not constitute a contemporaneous exchange for new value given to HMA.

b. If HMA's obligations under this Agreement are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the United States, at its sole option, may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against HMA for the claims that would otherwise be covered by the releases provided in Paragraphs 2, 9 and 10, above. HMA agrees that (i) any such claims, actions, or proceedings brought by the United States are not subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this Paragraph because it would be an exercise of the United States' police and regulatory power to protect public policy and public health, safety and welfare, and HMA shall not argue or otherwise contend that the United States' claims, actions, or proceedings are subject to an automatic stay; (ii) HMA shall not plead,

argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceeding that are brought by the United States within sixty (60) calendar days of written notification to HMA that the releases have been rescinded pursuant to this Paragraph, except to the extent such defenses were available on November 24, 2009; and (iii) the United States has an undisputed, noncontingent, and liquidated allowed claim against HMA in its successor capacity in the amount of $119,142,096, and the United States may pursue its claim in the case, action, or proceeding referenced in the first clause of this Paragraph, as well as in any other case, action, or proceeding.

    c.    HMA acknowledges that its agreements in this Paragraph are provided in exchange for valuable consideration provided in this Agreement.

24.    Upon receipt of the payment described in Paragraph 1 above, the Parties shall promptly sign and file in each of the Civil Actions a Joint Stipulation of Dismissal of the claims against HMA pursuant to Rule 41(a)(1) as follows:

Each notice of dismissal shall be with prejudice as to the United States' and each Relator's respective claims against HMA and all named HMA defendants (except Gary Newsome) as to the Covered Conduct in each Civil Action pursuant to and consistent with the terms and conditions of this Agreement;

Each notice of dismissal shall be without prejudice as to the United States and with prejudice as to each Relator as to all other claims by that Relator against HMA and all named HMA defendants (except Gary Newsome), and without prejudice as to the United States and each

Relator as to all other persons and entities named as defendants in that Relator's Civil Action pursuant to and consistent with the terms and conditions of this Agreement.

Provided, however, that the following claims shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States and any applicable State is obtained, and the Court is so informed:

Any claims each Relator may have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and analogous state statutes, to which HMA reserves all rights to challenge and object, including as to entitlement to any fees, expenses, or costs;

Any claims excluded under paragraph 13 of this agreement;

Any claims each Relator may have under § 3730(h) and comparable state laws;

Each Relator's claims for a relator's share under § 3730(d); and

Each Relator's claims for a relator's share under the Medicaid state settlement agreements.

The claims of the Plaintiff States which will be governed by the terms and conditions of the Medicaid State Settlement Agreements that HMA will enter into with the Medicaid Participating States.

25.     Except for each Relator's claims against HMA for attorneys' fees, costs, and expenses under 31 U.S.C. § 3730(d) and analogous state statutes, and any claims which are excluded from this Agreement in Paragraph 13, each Party shall bear its own legal and other costs incurred in connection with these matters, including the preparation and performance of this Agreement.

26.     Each party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

27.    This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Columbia, except for disputes arising from those claims excluded under Paragraph 13 of this Agreement that may be remanded to another district court pursuant to 28 U.S.C. § 1407(a). For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

28.    This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

29.    The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

30.    This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

31.    This Agreement is binding on HMA's successors, transferees, heirs, and assigns.

32.    This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

33.    All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

34.    This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 9-24-18      BY: *Laurie A. Oberembt*
                           Marie V. Bonkowski
                           Laurie A. Oberembt
                           Arthur Di Dio
                           Vanessa Reed
                           Attorneys
                           Commercial Litigation Branch
                           Civil Division
                           United States Department of Justice

DATED: 9·21·18      BY: _____
                           Todd P. Swanson
                           Assistant United States Attorney
                           Middle District of Georgia

DATED: 9/24/18      BY; *Linda Wawzenski (by LM)*
                           Linda Wawzenski
                           Assistant United States Attorney
                           Northern District of Illinois

DATED: _____      BY: _____
                           Jonathan Ferry
                           Assistant United States Attorney
                           Western District of North Carolina

DATED: _____      BY: _____
                           Jennifer Aldrich
                           Assistant United States Attorney
                           District of South Carolina

**THE UNITED STATES OF AMERICA**

DATED: _____     BY: _____
                         Marie V. Bonkowski
                         Laurie A. Oberembt
                         Arthur Di Dio
                         Vanessa Reed
                         Attorneys
                         Commercial Litigation Branch
                         Civil Division
                         United States Department of Justice


DATED: _____     BY: _____
                         Todd P. Swanson
                         Assistant United States Attorney
                         Middle District of Georgia


DATED: _____     BY; _____
                         Linda Wawzenski
                         Assistant United States Attorney
                         Northern District of Illinois


DATED: *9-21-18*     BY: _____
                         Jonathan Ferry
                         Assistant United States Attorney
                         Western District of North Carolina


DATED: _____     BY: _____
                         Jennifer Aldrich
                         Assistant United States Attorney
                         District of South Carolina

## THE UNITED STATES OF AMERICA

DATED: _____    BY: _____
                        Marie V. Bonkowski
                        Laurie A. Oberembt
                        Arthur Di Dio
                        Vanessa Reed
                        Attorneys
                        Commercial Litigation Branch
                        Civil Division
                        United States Department of Justice


DATED: _____    BY: _____
                        Todd P. Swanson
                        Assistant United States Attorney
                        Middle District of Georgia


DATED: _____    BY; _____
                        Linda Wawzenski
                        Assistant United States Attorney
                        Northern District of Illinois


DATED: _____    BY: _____
                        Jonathan Ferry
                        Assistant United States Attorney
                        Western District of North Carolina


DATED: _9/21/18_    BY: _____
                        Jennifer Aldrich
                        Assistant United States Attorney
                        District of South Carolina

DATED: 9|21|18    BY: _____

                            Susan Torres
                            Assistant United States Attorney
                            Southern District of Florida


DATED: _____    BY: _____

                            Lisa M. Re
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services


DATED: _____    BY: _____

                            Leigh A. Bradley
                            General Counsel
                            Defense Health Agency
                            United States Department of Defense

DATED: _____ BY: _____
                                            Susan Torres
                                            Assistant United States Attorney
                                            Southern District of Florida

DATED: 9/21/2018 BY: _____
                                            Lisa M. Re
                                            Assistant Inspector General for Legal Affairs
                                            Office of Counsel to the Inspector General
                                            Office of Inspector General
                                            United States Department of Health and Human Services

DATED: _____ BY: _____
                                            Leigh A. Bradley
                                            General Counsel
                                            Defense Health Agency
                                            United States Department of Defense

DATED: _____   BY: _____
                        Susan Torres
                        Assistant United States Attorney
                        Southern District of Florida




DATED: _____   BY: _____
                        Lisa M. Re
                        Assistant Inspector General for Legal Affairs
                        Office of Counsel to the Inspector General
                        Office of Inspector General
                        United States Department of Health and Human Services



                        BLEY.PAUL.NICHO  Digitally signed by
                                         BLEY.PAUL.NICHOLAS.109987382
DATED: 09/24/2018  BY:  LAS.1099873821   1
                                         Date: 2018.09.24 12:22:16 -04'00'
                        _____
                        Leigh A. Bradley
                   for   General Counsel
                        Defense Health Agency
                        United States Department of Defense

**DEFENDANTS HEALTH MANAGEMENT ASSOCIATES, INC., NOW KNOWN AS HEALTH MANAGEMENT ASSOCIATES, LLC, HMA PARENT and HMA SUBSIDIARIES.**

DATED: 9/21/2018     BY: _____

Christopher G. Cobb
Secretary
Health Management Associates, LLC and HMA Subsidiaries
Vice President-Legal and Corporate Secretary
HMA Parent

DATED: _____     BY: _____

Richard A. Sauber
Michael L. Waldman
Counsel for Health Management Associates, LLC, HMA Parent and HMA Subsidiaries

**<u>DEFENDANTS HEALTH MANAGEMENT ASSOCIATES, INC., NOW KNOWN AS HEALTH MANAGEMENT ASSOCIATES, LLC, HMA PARENT and HMA SUBSIDIARIES.</u>**

DATED: _____        BY: _____
Christopher G. Cobb
Secretary
Health Management Associates, LLC and HMA Subsidiaries
Vice President-Legal and Corporate Secretary
HMA Parent

DATED: _____        BY: _____
Richard A. Sauber
Michael L. Waldman
Counsel for Health Management Associates, LLC, HMA
Parent and HMA Subsidiaries

_____ GROUP
_____, Esquire

Counsel for Relator Craig Brummer, M.D.


By: Ralph Williams
_____

BY: _____
Ralph Williams


BY: _____
WILBANKS & GOTTINLOCK
Marlan Wilbanks, Esquire
Susan Gottinlock, Esquire


BY: _____
HORNSBY LAW GROUP
D. Brandon Hornsby, Esquire


Counsel for Relator Ralph Williams

## RELATORS

### Relator Craig Brummer, M.D.

DATED: _____     BY: _____
                         Craig Brummer, M.D.

DATED: 9 / 21 / 18     BY: _____
                         WILBANKS & GOUINLOCK
                         Marlan Wilbanks, Esquire
                         Susan Gouinlock, Esquire

                     BY: _____  THW
                         HORNSBY LAW GROUP
                         D. Brandon Hornsby, Esquire

                     Counsel for Relator Craig Brummer, M.D.

### Relator Ralph Williams

DATED: 9/21/18     BY: _____
                       Ralph Williams

DATED: 9/21/18     BY: _____
                       WILBANKS & GOUINLOCK
                       Marlan Wilbanks, Esquire
                       Susan Gouinlock, Esquire

                   BY: _____  THW
                       HORNSBY LAW GROUP
                       D. Brandon Hornsby, Esquire

                   Counsel for Relator Ralph Williams

**Relator Scott H. Plantz, M.D.**

DATED: Sep 21 2016   BY: _____
                          Scott H. Plantz, M.D.

DATED: 9/21/18   BY: _____
                     Goldberg Kohn LTD
                     David J. Chizewer
                     Matthew K. Organ

                     Counsel for Relator Scott H. Plantz, M.D.

**Relator Thomas L. Mason, M.D., FACEP.**

DATED: 9/21/18     BY: _Thomas L. Mason, MD_
                             Thomas L. Mason, M.D.

**Relator Steven G. Folstad, M.D., FACEP**

DATED: _____     BY: _____
                             Steven G. Folstad, M.D.

**Relator Mid-Atlantic Emergency Medical Associates, P.A.**

DATED: _____     BY: _____
                             Timothy E. Lietz, MD, FACEP, President/CEO

DATED: 9/21/2018     BY: _Marc S. Raspanti_
                             PIETRAGALLO GORDON ALFANO
                             BOSICK & RASPANTI, LLP
                             Marc S. Raspanti, Esquire
                             Pamela Coyle Brecht, Esquire
                             Michael A. Morse, Esquire

                             _James F. Wyatt_
                             WYATT & BLAKE, LLP
                             James R. Wyatt, III, Esquire

                             Counsel for Relators Mason, Folstad, and Mid-Atlantic
                             Emergency Medical Associates

Relator Thomas L. Mason, M.D., FACEP.


DATED: _____     BY: _____
                         Thomas L. Mason, M.D.

Relator Steven G. Folstad, M.D., FACEP


DATED: 9/21/18     BY: _____
                       Steven G. Folstad, M.D.

Relator Mid-Atlantic Emergency Medical Associates, P.A.


DATED: 9/21/18     BY: _____
                       Timothy E. Lietz, MD, FACEP, President/CEO


DATED: 9/21/2018   BY: _____
                       PIETRAGALLO GORDON ALFANO
                       BOSICK & RASPANTI, LLP
                       Marc S. Raspanti, Esquire
                       Pamela Coyle Brecht, Esquire
                       Michael A. Morse, Esquire



                       _____
                       WYATT & BLAKE, LLP
                       James F. Wyatt, III, Esquire

                       Counsel for Relators Mason, Folstad, and Mid-Atlantic
                       Emergency Medical Associates

- 32 -

**Relator Jacqueline Meyer**


DATED: _____     BY: _____
                          Jacqueline Meyer


**Relator Michael Cowling**


DATED: _____     BY: _____
                          Michael Cowling


DATED: 9.21.18       BY: _____
                          VOGEL, SLADE & GOLDSTEIN, LLP
                          Janet L. Goldstein, Esquire


                          _____
                          WYCHE, PA
                          John C. Moylan, Esquire

                          Counsel for Relators Jacqueline Meyer
                           and Michael Cowling

**Relator Jacqueline Meyer**

DATED: _____     BY: _____
                            Jacqueline Meyer

**Relator Michael Cowling**

DATED: _____     BY: _____
                            Michael Cowling

DATED: _____     BY: _____
                            VOGEL, SLADE & GOLDSTEIN, LLP
                            Janet L. Goldstein, Esquire

                            _____
                            WYCHE, PA
                            John C. Moylan, Esquire

                            Counsel for Relators Jacqueline Meyer
                            and Michael Cowling

**Relator Paul Meyer**

DATED: SEPT. 21, 2018

BY: _Paul W Meyer Jr._
Paul Meyer

DATED: 9/21/18

BY: _(signature)_
ISICOFF & RAGATZ, PLLC
Eric D. Isicoff, Esq.
Teresa Ragatz, Esq.

Counsel for Relator Paul Meyer