# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTEE DIVISION
## CIVIL NO. 3:10-CV-472-KDB-DSC

| | |
|---|---|
| THOMAS L. MASON M.D. et. al., | ) |
| | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HEALTH MANAGEMENT | ) |
| ASSOCIATES LLC et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on the HMA Defendants' "Motion to Dismiss" (document #81), the EmCare Defendants' "Motion to Dismiss" (document #86), and "Defendant Community Health System, Inc.'s Motion to Dismiss" (document #95), along with the parties' briefs and exhibits.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and these Motions are ripe for disposition.

On July 12, 2019, Plaintiffs voluntarily dismissed Defendant Community Health System, Inc. ("CHS") See Document #99. Accordingly, the undersigned respectfully recommends that "Defendant Community Health System, Inc.'s Motion to Dismiss" (document #95) be denied as moot.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that HMA and EmCare's Motions to Dismiss be granted in

1

part and denied in part as discussed below.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Accepting the factual allegations of the Complaint as true, Plaintiff Mid-Atlantic Emergency Medical Associates PLLC ("MEMA") is a North Carolina professional medical corporation that provides emergency room ("ER") medical services under professional services agreements with hospitals in the Charlotte area. MEMA physicians provided ER coverage under professional services agreements with two hospitals then owned and operated by Defendant Health Management Associates LLC, f/k/a Health Management Associates Inc. ("HMA"): Davis Regional Medical Center ("Davis Hospital") beginning November 1, 2000 and Lake Norman Regional Medical Center ("Lake Norman Hospital") beginning July 1, 1996. HMA terminated MEMA's contracts with those hospitals on May 3, 2010.

Plaintiffs Mason and Folstad are the principals in MEMA and board certified emergency medicine physicians. Mason served as ER Director and member of the Medical Executive Committee at Lake Norman Hospital from 1997 to 2010. He also served as the hospital's Chief of Staff. Folstad served as ER Director at Davis Hospital until 2008 when he became MEMA's CEO.

Plaintiffs allege that HMA terminated their contracts in retaliation for their refusal to participate in a scheme to submit false claims to Medicare, Medicaid and other government funded healthcare programs. Instead, Plaintiffs complained about and attempted to stop the fraudulent activity. HMA replaced Plaintiffs' ER services with those provided by the EmCare Defendants. HMA and EmCare made false statements about the quality of Plaintiffs' medical care. EmCare agreed to participate in HMA's false claim scheme if they were awarded the ER contracts.

2

Plaintiffs originally brought this action as qui tam relators on their own behalf and on behalf of the United States and the states of North Carolina, Florida, Georgia, Oklahoma, Tennessee and Texas against HMA, its successor in interest CHS, and EmCare for violations of the federal False Claims Act, 31 U.S.C. § 3730 et. seq., ("FCA") and parallel state statutes. In December 2017, EmCare paid $33 million to settle government claims. In September 2018, HMA and CHS paid $262 million to settle government claims, of which $74.5 million arose from ER fraud and $8.96 million related to its relationship with EmCare.

On April 26, 2019, Plaintiffs filed their Third Severed Amended Complaint which contains their remaining claims for FCA retaliation, defamation, and slander per se against the HMA Defendants only, as well as claims for tortious interference with a contractual relationship, unfair and deceptive trade practices, and civil conspiracy against all Defendants.

Defendants' Motions to Dismiss have been fully briefed and are ripe for determination.

## II. DISCUSSION

### A. Standard of Review

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly,

550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss

4

a claim on the basis of a dispositive issue of law." <u>Sons of Confederate Veterans v. City of Lexington</u>, 722 F.3d 224, 228 (4th Cir. 2013) (quoting <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989)). Indeed, where "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations, a claim must be dismissed." <u>Neitzke v. Williams</u>, 490 U.S. at 328; <u>see also</u> <u>Stratton v. Mecklenburg Cnty. Dept. of Soc. Servs.</u>, 521 Fed. Appx. 278, 293 (4th Cir. 2013)). The court must not "accept as true a legal conclusion couched as a factual allegation." <u>Anand v. Ocwen Loan Servicing, LLC</u>, 754 F.3d 195, 198 (4th Cir. 2014).

### B. <u>HMA Defendants' Motion to Dismiss</u>

#### 1. **FCA Retaliation Claims**

HMA contends that Plaintiffs lack standing to bring FCA retaliation claims. The FCA's anti-retaliation provision, 31 U.S.C. § 3730(h)(1) provides:

> Relief from retaliatory actions.-- In general.--**Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole**, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

Emphasis added. <u>See</u> <u>U.S. ex rel. Bias v. Tangipahoa Parish Sch. Bd.</u>, 816 F.3d 315, 323-24 (5th Cir. 2016) ("In 2009, Congress amended the FCA retaliation statute by omitting the word 'employer' as the only potentially culpable party, and adding 'contractor' or 'agent' to 'employee' as identifiers of a possible aggrieved party."); <u>U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.</u>, 2012 U.S. Dist. LEXIS 185456, at *9-10 (D.S.C. May 3, 2012) (Congress closed a loophole through which a defendant previously avoided liability for retaliation against those with whom it lacked a traditional employer-employee relationship). Remedial in nature, the statute as amended

5

is "to be construed 'broadly to effectuate its purpose'" of preventing retaliation against false claims whistleblowers. Bias, 816 F.3d at 324. "[I]t is clear that the purpose [of the amendment] was to ensure that the protections of the [FCA] extended beyond a traditional employment relationship." Ickes v. NexCare Health Sys., L.L.C., 178 F. Supp. 3d 578, 591 (E.D. Mich. 2016).

HMA argues that as a professional association, MEMA lacks standing under the statute. The Court is persuaded that § 3730(h)(1) "means what it says" and that contractors such as MEMA are proper plaintiffs. Munson Hardisty, LLC v. Legacy Point Apartments, LLC, 359 F. Supp. 3d 546, 558 (E.D. Tenn. 2019) (an LLC that was general contractor on defendant's construction project was proper FCA plaintiff).

Although Plaintiffs Mason and Folstad did not contract directly with the HMA Defendants, Plaintiffs have alleged that the HMA Defendants held them out as their agents and exerted daily control over their activities. Both doctors served as ER Directors. Dr. Mason also served on the Medical Executive Committee at Lake Norman Hospital and as its Chief of Staff. See Diggs v. Novant Health, Inc., 628 S.E.2d 851, 862-63 (N.C. Ct. App. 2006) (hospital had agency relationship with anesthesiologists where hospital held itself out as providing anesthesia services and appointed anesthesiologist to serve as director of department); Univ. of N. Carolina v. Shoemate, 437 S.E.2d 892, 898 (N. C. Ct. App. 1994) (agency relationship exists where person, "by words or conduct, represents or permits it to be represented that another is his agent"); Willoughby v. Wilkins, 310 S.E.2d 90, 96 (N.C. Ct. App. 1983) (noting ER doctor's performance "in such a manner as to further the best interest of [defendant] hospital" suggested doctor was agent of hospital). Plaintiffs have alleged sufficient facts to establish their standing to bring FCA retaliation claims. Accordingly, the undersigned respectfully recommends that the HMA

6

Defendants' Motion to Dismiss those claims be <u>denied</u>.

### 2. North Carolina UDTPA Claim

The HMA Defendants contend that the "learned profession" exception to the UDTPA applies here. "Any party claiming to be exempt from the [NCUDTPA] shall have the burden of proof with respect to such claim." N.C. Gen. Stat. § 75-1.1(c).   A two-part inquiry determines whether the learned profession exemption applies. <u>Sykes v. Health Network Sols., Inc.</u>, 2019 N.C. LEXIS 521, at *12 (N.C. Jun. 14, 2019). "First, the person or entity performing the alleged act must be a member of a learned profession." <u>Id.</u> at *12-13. "Second, the conduct in question must be a rendering of professional services." <u>Id.</u> at *13. While activities of a strictly professional nature are exempt from the UDTPA, commercial activities—even those of otherwise "learned professionals"—remain within statute. <u>Hamlet H.M.A., LLC v. Hernandez</u>, 821 S.E.2d 600, 608 (N.C. Ct. App. 2018).

In <u>Hamlet H.M.A.</u>, the North Carolina Court of Appeals recently held that a business dispute between a hospital and a physician fell under UDTPA. <u>Id.</u> at 607-08.  The Court stated "[i]f we were to interpret the learned profession exception as broadly as plaintiffs suggest we should, any business arrangement between medical professionals would be exempted from UDTP claims. The learned profession exception does not cover claims simply because the participants in the contract are medical professionals." <u>Id.</u> at 608.  For those same reasons, the learned profession exception does not apply to Plaintiffs' UDTPA claims.  The undersigned respectfully recommends that the HMA Defendants' Motion to Dismiss those claims be <u>denied</u>.

### 3. Tortious Interference with Contractual Relationship Claim

To plead a claim for tortious interference with a contractual relationship, Plaintiffs must

allege that: (1) a contract existed between plaintiff and a third party which conferred upon the plaintiff a contractual right; (2) the defendant had knowledge of the contract; (3) the defendant intentionally induced the third party not to perform under the contract; (4) in doing so, the defendant acted without justification; and (5) defendant's acts caused plaintiff actual damages. Carolina Overall Corp. v. E. Carolina Linen Supply, Inc., 174 S.E.2d 659, 660 (N.C. Ct. App. 1970). HMA challenges only the fourth element—whether it acted without justification.

Parent companies and corporate fiduciaries maintain a qualified privilege to interfere with contractual relations between the corporation or its subsidiary and third parties. Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 351-52 (4th Cir. 1998). Where the privilege applies, the non-outsider's conduct is presumed justified; provided, however, "the qualified privilege may be waived and liability may be imposed" where, as here, "an insider's acts involve individual and separate torts . . . or where his acts are performed in his own interest and adverse to that of his firm." Id. (internal quotation marks omitted). Thus, this privilege is waived when the insider interferes with the contract either: (1) as a result of improper motives; or (2) by improper means. Embree Constr. Grp., Inc. v. Rafcor, Inc., 411 S.E.2d 916, 924 (N.C. 1992). "[C]onduct that is 'in violation of statutory provisions or contrary to established public policy may … make an interference improper.'" Albright v. Charlotte-Mecklenburg Bd. of Educ., 2017 U.S. Dist. LEXIS 199763, at *15 (W.D.N.C. Dec. 5, 2017) (citing Ga. Pac. Consumer Prods., L.P. v. Von Drehle Corp., 618 F.3d 441, 457 (4th Cir. 2010)).

An insider has an improper motive—and thus lacks justification to interfere with the contract—when the interference arises out of "a desire to retaliate" against the party to the contract. MCI Constrs. v. Hazen & Sawyer, P.C., 405 F. Supp. 2d 621, 630 (M.D.N.C. 2005); see also B.V.I.

8

Indus. v. Microsoft Corp., 1987 U.S. App. LEXIS 18745, at *7-9 (4th Cir. Aug. 11, 1987) (plaintiff's allegation that defendant's actions were in retaliation against plaintiff were sufficient for a jury to find defendant's alleged legitimate business interest was pretext). Plaintiffs have alleged facts that taken as true establish that the HMA Defendants' motive in inducing the termination of MEMA's Agreements with the Hospitals was in retaliation for Plaintiffs' refusal to participate in HMA's fraudulent scheme. For that reason, the undersigned respectfully recommends that HMA's Motion to Dismiss the tortious interference with contract claim be denied.

### 4. Defamation and Slander Per Se Claims

"In order to recover for defamation, a plaintiff must allege that the defendant caused injury to the plaintiff by making false, defamatory statements of or concerning the plaintiff, which were published to a third person." Boyce & Isley, PLLC v. Cooper, 568 S.E.2d 893, 897 (N.C. Ct. App. 2002). Slander per se "is a false statement which is orally communicated to a third person and amounts to . . . an allegation that impeaches the plaintiff in his trade, business, or profession." Elina Adoption Services v. Carolina Adoption Services, 2008 U.S. Dist. LEXIS 87745, at *14 (M.D.N.C. Aug. 25, 2008). In the Severed Third Amended Complaint, Plaintiffs allege that the HMA Defendants made false and defamatory statements about the quality of their medical services to its Board of Directors, "numerous other physicians" and "numerous others in Plaintiffs' community." See Elina, 2008 U.S. Dist. LEXIS 87745, at *20 (plaintiff sufficiently alleged the identities of the individuals to whom the alleged defamatory statements were made to include "clients"). Accordingly, the undersigned respectfully recommends that the HMA Defendants' Motion to Dismiss the defamation and slander per se claims be denied.

9

### 5. Civil Conspiracy Claim

In North Carolina, "[t]here is no independent cause of action for civil conspiracy." <u>Toomer v. Garrett</u>, 574 S.E.2d 76, 92 (N.C. App. 2002). However, if the plaintiff can establish the existence of a civil conspiracy, all of the conspirators will be jointly and severally liable for the act of any other conspirator undertaken in furtherance of the conspiracy. <u>Spirax Sarco, Inc. v. SSI Eng'g, Inc.</u>, No. 5:14-CV-519-F, 2015 WL 4723609, at *7 (E.D.N.C. Aug. 10, 2015) (quoting <u>Jackson v. Blue Dolphin Commc'ns of N. Carolina, L.L.C.</u>, 226 F.Supp.2d 785, 791 (W.D.N.C. 2002)). The plaintiff must allege: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." <u>Piraino Bros., LLC v. Atlantic Fin. Grp.</u>, Inc., 712 S.E.2d 328, 333 (N.C. App. 2011).

Accordingly, for purposes of clarity, the undersigned respectfully recommends that the HMA Defendants' Motion to Dismiss be <u>granted</u> to the extent it seeks dismissal of the cause of action for civil conspiracy. The undersigned respectfully recommends that this dismissal be <u>without prejudice</u> to Plaintiffs' right to argue the remedy of joint and several liability under a theory of civil conspiracy should they prevail on one or more of the remaining claims for relief.

### C. Emcare Defendants' Motion to Dismiss

The Emcare Defendants move to dismiss Plaintiffs' tortious interference with contractual relationship, UDTPA, and civil conspiracy claims. For the same reasons discussed above, the undersigned respectfully recommends that the Emcare Defendants' Motion be denied as to Plaintiffs' tortious interference and UDTPA claims. The undersigned respectfully recommends that the Emcare Cefendants' Motion to Dismiss be <u>granted</u> to the extent it seeks dismissal of the

cause of action for civil conspiracy. The undersigned respectfully recommends that this dismissal be <u>without prejudice</u> to Plaintiffs' right to argue the remedy of joint and several liability under a theory of civil conspiracy should they prevail on one or more of the remaining claims for relief.

## III. <u>RECOMMENDATION</u>

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that:

1. "Defendant Community Health System, Inc.'s Motion to Dismiss" (document #95) be **DENIED AS MOOT.**

2. HMA Defendants' "Motion to Dismiss" (document #81) and EmCare Defendants' "Motion to Dismiss" (document #86) be **GRANTED IN PART** and **DENIED IN PART**, that is **GRANTED** as to Plaintiffs' civil conspiracy claim without prejudice to Plaintiffs seeking joint and several liability under a theory of civil conspiracy, and **DENIED** in all other respects.

## IV. <u>NOTICE OF APPEAL RIGHTS</u>

The parties are hereby advised that pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>Wells v. Shriners Hosp.</u>, 109 F.3d 198, 201 (4th Cir. 1997); <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140, 147 (1985); <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Wells</u>, 109 F.3d at 201; <u>Wright v. Collins</u>, 766

11

F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the parties' counsel and to the Honorable Kenneth D. Bell.

**SO ORDERED AND RECOMMENDED.**

Signed: September 5, 2019

David S. Cayer
United States Magistrate Judge