IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:10-CV-00472-KDB-DSC

| | |
|---|---|
| THOMAS L. MASON M.D. et al., <br><br> Plaintiffs, <br><br> v. <br><br> HEALTH MANAGEMENT ASSOCIATES, LLC et al., <br><br> Defendants. | **ORDER** |

**THIS MATTER** is before the Court on the HMA Defendants'[1] Motion to Dismiss (Doc. No. 81), the EmCare Defendants'[2] Motion to Dismiss (Doc. No. 86), Defendant Community Health System, Inc.'s Motion to Dismiss (Doc. No. 95), and the Honorable Magistrate Judge David S. Cayer's Memorandum and Recommendation ("M&R") (Doc. No. 105), recommending that Defendants' motions be granted in part and denied in part.

The Court has carefully reviewed and considered *de novo* the M&R, Plaintiffs'[3] Third Amended Complaint (Doc. No. 67), the HMA Defendants' motion to dismiss (Doc. No. 95), the EmCare Defendants' motion to dismiss (Doc. No. 86), the parties' briefs, and all other relevant portions of the record. For the reasons stated herein, the Court **ADOPTS** the Magistrate Judge's

---

[1] The "HMA Defendants" are collectively, Health Management Associates, LLC f/k/a Health Management Associates, Inc. ("HMA"), Statesville HMA, LLC d/b/a Davis Regional Medical Center ("Davis Hospital"), and Mooresville Hospital Management Associates, LLC d/b/a Lake Norman Regional Medical Center's ("Lake Norman Hospital," together with Davis Hospital, the "Hospitals").

[2] The "EmCare Defendants" are collectively, EmCare Holdings, Inc., Emergency Medical Services, L.P., and Envision Healthcare Corporation.

[3] Plaintiffs are Mid-Atlantic Emergency Medication Associates, PPLC ("MEMA"), Thomas L. Mason, M.D., and Steven G. Folstad, M.D. (collectively, Drs. Folstad and Mason are the "Doctors").

1

recommendation contained in the M&R as discussed below and **GRANTS IN PART** and **DENIES IN PART** Defendants' motions to dismiss.

## I. BACKGROUND

This case arises out of the operations of emergency medical departments at two hospitals in the Charlotte area. Taking the allegations set forth in the Complaint as true, Plaintiff Mid-Atlantic Emergency Medical Associates, PPLC ("MEMA") is a professional medical corporation that provides emergency room ("ER") medical services under professional services agreements with hospitals in the Charlotte area. (Complaint, Doc. No. 67, at ¶¶1-2). MEMA physicians provided ER services to two hospitals then-owned and operated by Defendant Health Management Associates, LLC ("HMA"). *Id.* at ¶ 2. MEMA provided services to Davis Regional Medical Center beginning in 2000 and Lake Norman Regional Medical center beginning in 1996. *Id.* Plaintiffs claim HMA unlawfully terminated these contracts on May 3, 2010. *Id.*

Plaintiffs Thomas Mason and Steven Folstad are principals of MEMA and board-certified emergency medicine physicians. *Id.* at ¶ 3. Mason served as Lake Norman's Chief of Staff, a member of the Lake Norman's Medical Executive Committee for thirteen years, and as the Emergency Medical Department Medical Director at Lake Norman Hospital from 2007 until MEMA's contract was terminated. *Id.* at ¶ 3. Folstad worked as the ER Medical Director at Davis Hospital from 2000 to 2008 before becoming MEMA's CEO. *Id.* at ¶ 4.

Plaintiffs claim that the HMA Defendants, with the help of the EmCare Defendants, submitted false claims to Medicare, Medicaid, other federally-funded healthcare programs, private healthcare insurers, and patients throughout their time at the two hospitals. *Id.* at ¶¶ 16-17. Plaintiffs allege that HMA terminated their contracts in retaliation for their refusal to participate in this fraudulent scheme. *Id.* at ¶ 18.

Plaintiffs originally brought this action as *qui tam* relators on their own behalf and on behalf of the United States and the states of North Carolina, Florida, Georgia, Oklahoma, Tennessee, and Texas against HMA, its successor in interest Community Health System, Inc., and EmCare for violations of the federal False Claims Act, 31 U.S.C. § 3730 *et. seq. Id.* at ¶ 19. In December 2017, EmCare paid $33 million to settle government claims. *Id.* at ¶ 20. In September 2018, HMA and Community Health System paid $262 million to settle government claims. *Id.*

Plaintiffs filed their Third Severed Amended Complaint ("TAC") on April 26, 2019 containing their remaining claims against Defendants. (Doc. No. 67). In it, Plaintiffs allege retaliation under the federal False Claims Act, retaliation under the North Carolina False Claims Act, defamation, and slander per se against the HMA Defendants only and claims for tortious interference with a contractual relationship, unfair and deceptive trade practices, and civil conspiracy against all Defendants. (Doc. No. 67, at ¶¶ 203-248).

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." *Revene v. Charles County Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp.*, 213 F.3d 175, 180 (4th Cir. 2000).

The *Federal Magistrates Act of 1979,* as amended, provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Camby v. Davis,* 718 F.2d 198, 200 (4th Cir. 1983). However, *de novo* review is not required by the statute "when a party makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations." *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982). Moreover, the statute does not on its face require any review at all of issues that are not the subject of an objection. *Thomas v. Arn,* 474 U.S. 140, 149 (1985); *Camby v. Davis,* 718 F.2d at 200.

## III. DISCUSSION

The HMA Defendants and the EmCare Defendants object to the Magistrate Judge's recommendation to deny their motions to dismiss Plaintiffs' claims for retaliation under the federal and North Carolina False Claims Act, unfair and deceptive trade practices, tortious interference with contractual relationship, and defamation and slander per se. (Doc. Nos. 110, 111). Defendants also object to the Magistrate Judge's recommendation to dismiss Plaintiffs civil conspiracy claim without prejudice to Plaintiffs' right to argue the remedy of joint and several liability under a theory of civil conspiracy. (Doc. Nos. 110, 111).

### A. Community Health System, Inc.'s Motion to Dismiss

Plaintiffs voluntarily dismissed Defendant Community Health System on July 12, 2019. (Doc. No. 99). Accordingly, the Magistrate Judge recommends Community Health System's Motion to Dismiss (Doc. No. 95) be denied as moot and no parties have objected to his recommendation. Having carefully reviewed the Magistrate Judge's M&R, the relevant portions of the record, and applicable legal authority, this Court is satisfied that there is no clear error as to the Magistrate Judge's recommendation to deny as moot Community Health System's motion to dismiss, to which no objection was made. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005). Accordingly, this Court finds that it should adopt the findings and recommendations set forth in the M&R as its own solely for the purpose of deciding this motion and that Community Health System's motion to dismiss (Doc. No. 95) be denied as moot.

### B. The HMA Defendants' and the EmCare Defendants' Motions to Dismiss

*1. False Claims Act Retaliation Claims*

Plaintiffs claim the HMA Defendants retaliated against them in violation the federal and North Carolina False Claims Act (FCA). The anti-retaliation section of the federal FCA states:

> (h) Relief from retaliatory actions.—(1) In general.—*Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole*, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1) (emphasis added). The purpose of the FCA is to expose fraud that the government itself cannot easily uncover by encouraging private parties to report fraudulent conduct. *See U.S. ex rel. Rebushka v. Crane Co.*, 40 F.3d 1509, 1511 (8th Cir. 1994); *U.S. ex rel Dick v. Long Island Lighting Co.*, 912 F.2d 13, 18 (2nd Cir. 1990). Consistent with this purpose, Congress amended the FCA retaliation statute in 2009 "by omitting the word 'employee' as the only potentially culpable party, and adding 'contractor' or 'agent' to 'employee' as identifiers of a possible aggrieved party." *U.S. ex rel Bias v. Tangipahoa Parish Sch. Bd.*, 816 F.3d 315, 323-24 (5th Cir. 2016). "The 2009 amendments sought to correct what Congress viewed as the unduly narrow interpretation that the courts had given to the term 'employee.'" *U.S. ex rel. Abou-Hussein v. Sci. Applications Int'l Corp.*, 2012 WL 6892716, at *3 (D.S.C. May 3, 2012); *see also Bias*, 816 F.3d at 324 ("Because the FCA is 'remedial,' its provisions are to be construed 'broadly to effectuate its purpose.'").

Defendants argue that the 2009 amendment expanded the possible aggrieved parties from just "employee(s)" to also include "contractor(s)" and "agent(s)," but did not expand retaliation protections available to individuals to also include entities. The Court will not attempt to discern the intent of Congress beyond the words it used: "contractor" and "agent." MEMA is alleged to have been a "contractor" of Defendants and are therefore permitted to assert a claim for impermissible retaliation.

While the Court would apply the ordinary meaning of the words Congress placed in the statute in any event, there is no legislative history to suggest that Congress considered, but declined, including entities among those protected from retaliation. Nor is there legislative history, or caselaw, suggesting that an entity made up of "employees" is excluded from retaliation protection, either before or after the amendment.

Even if defendants are correct, and entities that are "contractors" or "agents" are not protected from retaliation, the question becomes whether MEMA, a group of physicians, should be considered a group of "individuals" rather than an "entity." The physicians, through MEMA, allegedly complained of HMA's fraudulent conduct, and HMA, through MEMA, allegedly retaliated against the physicians.[4]

Further, MEMA, along with the individual plaintiff physicians, were "Relators" in the qui tam action, and named as such in the Settlement Agreement. (Doc. No. 96-1, at 2, 12, 16, 38). MEMA, the alleged contractor, was in practical effect simply a corporate structure through which the individuals both complained and were retaliated against. Given the remedial nature of the anti-retaliation statute, the plain language of the statue allows MEMA to bring claims of retaliation in violation of both the federal and state False Claims Acts.

Plaintiffs have plausibly alleged that the Doctors were agents of the HMA Defendants. The Complaint alleges that both Doctors served as ER directors at the hospitals and that Mason served on the Medical Executive Committee and as Chief of Staff at Lake Norman Hospital. (Complaint,

---

[4] MEMA is a "professional medical corporation," (Doc. No. 67, at ¶ 1), "which at the time was the largest group of board-certified emergency physicians in the Charlotte area." *Id.* at ¶ 179. "MEMA was a contractor and agent of the HMA defendants." *Id.* at ¶ 205. The complaint repeatedly alleges that individual plaintiff physicians and "other [physician] members of MEMA" complained to HMA about its fraudulent practices. *See id.* at ¶ 18.

Doc. No. 67, ¶¶ 3-4). *See Diggs v. Novant Health, Inc.*, 628 S.E.2d 851, 862-63 (N.C. Ct. App. 2006) (holding a hospital had an agency relationship with anesthesiologists where the hospital held itself out as providing anesthesia services and appointed anesthesiologist to serve as director of department); *Univ. of N. Carolina v. Shoemate*, 437 S.E.2d 892, 898 (N.C. Ct. App. 1994) (stating that an agency relationship arises when "a person, by words or conduct, represents or permits it to be represented that another is his agent"); *Willoughby v. Wilkins*, 310 S.E.2d 90, 96 (N.C. Ct. App. 1983) (noting ER doctor's performance "in such a manner as to further the best interest of [defendant] hospital" suggested doctor was an agent of the hospital). It is ultimately up to a jury to decide whether there was such an agency relationship, but Plaintiffs have met the low burden of pleading a plausible claim to survive the motion to dismiss stage. *Hylton v. Koontz*, 532 S.E.2d 252, 257 (N.C. Ct. App. 2000) ("Unless there is but one inference that can be drawn from the facts, whether an agency relationship exists is a question of fact for the jury.").

Plaintiffs filed a request for clarification in the form of an objection to the M&R that seeks to clarify whether the Magistrate Judge's recommendation for the federal FCA retaliation claim extends to the claims arising under the North Carolina False Claims Act. (Doc. No. 109). North Carolina General Statute § 1-616(c) states that the North Carolina False Claims Act "shall be interpreted and construed so as to be consistent with the federal False Claims Act, 31 U.S.C. § 3729, *et seq.*, and any subsequent amendments to that act." Therefore, because the HMA Defendants' motion to dismiss retaliation claims under the federal FCA is denied, so is their motion to dismiss retaliation claims under the North Carolina False Claims Act.

*2. North Carolina UDTPA Claim*

Plaintiffs claim unfair and deceptive trade practices against both the HMA Defendants and the EmCare Defendants. Under the UDTPA, "[u]nfair methods of competition in or affecting

commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C.G.S. § 75-1.1. The "learned profession" exception to the UDTPA requires a two-part analysis: (1) "the person or entity performing the alleged act must be a member of a learned profession"; and (2) "the conduct in question must be a rendering of professional services." *Sykes v. Health Network Solutions, Inc.*, 828 S.E.2d 467, 472 (N.C. 2019). "There is no dispute that doctors and hospitals are members of a learned profession." *Hamlet H.M.A., LLC v. Hernandez*, 821 S.E.2d 600, 606 (N.C. Ct. App. 2018). Conduct that is integral to the role of ensuring the provision of adequate medical care is considered a rendering of professional services. *See id.* at 607; *Wheeles v. Maria Parham Med. Ctr., Inc.*, 768 S.E.2d 119, 124 (N.C. Ct. App. 2014).

In 2018, the North Carolina Court of Appeals held that a business dispute between a hospital and physician did not fall under the learned profession exception of the UDTPA. *Hamlet H.M.A., LLC*, 821 S.E.2d at 608 ("This case involves a business deal, not rendition of professional medical services."). The court explained that the learned profession exception does not apply merely because the participants are medical professionals. *Id.* "For example, if a physician entered into a lease agreement for space in a medical office building owned by a group of physicians or hospital and then seeks to bring a UDTP claim based upon a dispute over the lease, it should be treated no differently than a similar lease arrangement for parties in any other business. The fact that medical services will be provided in the building does not mean that the lease arrangement arises from rendition of professional services and has no effect on the quality of the medical care provided." *Id.*

The Magistrate Judge, relying on *Hamlet H.M.A.*, recommends that the Defendants' motions to dismiss the UDTPA claims be denied. (Doc. No. 105, at 7). The HMA Defendants and the EmCare Defendants object, arguing that the learned profession exception should apply in this

9

case. Plaintiffs argue that the Defendants are not members of a learned profession nor were they rendering professional services when they engaged in and conspired to commit healthcare fraud, retaliated against Plaintiffs, and defamed Plaintiffs. (Doc. No. 67, ¶ 237).

Because this claim arises out of the business relationship between Plaintiffs and Defendants, the learned profession exception does not apply. Plaintiffs' unfair and deceptive trade practices claims arise out of the professional service agreements with the HMA Defendants, not the rendering of medical care. Even the EmCare Defendants assert that this suit arises from a "garden-variety business dispute." (Doc. No. 87, at 7). Therefore, Defendants' motions to dismiss Plaintiffs' UDTPA claims are denied.

*3. Tortious Interference with Contractual Relationship Claim*

Plaintiffs claim tortious interference with contractual relationship against both the HMA Defendants and the EmCare Defendants. Under North Carolina law, the elements for tortious interference with contract are: "(1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff." *Beverage Sys., LLC v. Assoc. Beverage Repair, LLC*, 784 S.E.2d 457, 699 (N.C. 2016) (internal quotations and citations omitted).

"Officers, directors, shareholder, and other corporate fiduciaries have a qualified privilege to interfere with contractual relations between the corporation and a third party." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 351-352 (4th Cir. 1998) (internal quotations omitted). "However, the conduct is not privileged or justified if the officer's motives are improper, as when his acts are performed in his own best interest and adverse to that of his firm." *Albright v.*

10

*Charlotte-Mecklenburg Bd. of Educ.*, No. 3:17-cv-4610, 2017 WL 6028362 (W.D.N.C. Dec. 5, 2017) (internal quotations omitted). Retaliation is an improper motive. *See MCI Constrs. V. Hazen & Sawyer, P.C.*, 405 F. Supp. 2d 621, 630 (M.D.N.C. 2005); *B.V.I. Inuds. v. Microsoft Corp.*, 1987 U.S. App. LEXIS 18745, at *7-9 (4th Cir. Aug. 11, 1987).

The HMA Defendants contend that Plaintiffs have failed to show that HMA had no legitimate business interest in terminating the contract. HMA also submits that, as the Hospitals' parent company, it was privileged to interfere with the Hospitals' contractual relationships. The EmCare Defendants argue that they were justified in their actions because they had a legitimate business interest as a competitor of the Plaintiffs and that the Plaintiffs failed to allege EmCare induced HMA to terminate the contract.

Plaintiffs have alleged sufficient facts that the HMA Defendants were motivated to retaliate against them for refusing to participate in their fraudulent healthcare scheme. This improper motive takes the HMA Defendants outside of the protection provided by the privilege. Additionally, the question of whether the HMA Defendants and the EmCare Defendants had a legitimate business interest and acted in good faith is one for the jury to decide. *See Albright v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:17-cv-4610, 2017 WL 6028362 (W.D.N.C. Dec. 5, 2017) ("Because whether the act was justified or in good faith depends upon the circumstances surrounding the interference, the actor's motive or conduct, the interests sought to be advanced, the social interest in protecting the freedom of action of the actor, and the contractual interests of the other party, the question is often one of fact that cannot be resolved on a motion to dismiss.").

Plaintiffs have alleged that the EmCare Defendants intentionally induced HMA to terminate the contract. In their TAC, Plaintiffs state that "[i]in order for the EmCare Defendants to maximize its financial benefits under the PPPA and the HMA, they sought to induce hospital

administrators to terminate MEMA's Lake Norman Hospital Agreement and Davis Hospital Agreement so that EmCare could bid on them." (Doc. No. 67, ¶ 178; *see also id.* at ¶ 220). Taking this statement and similar statements in light of the factual allegations pled, Plaintiffs have met the low standard of Federal Rule of Civil Procedure 8(a)(2) and the question of whether the EmCare Defendants intentionally induced HMA to terminate the contract is one for the merits. For these reasons, the Court agrees with the Magistrate Judge's recommendation and will deny the HMA Defendants' and the EmCare Defendants' motions to dismiss Plaintiff's tortious interference with contract claim.

*4. Defamation and Slander Per Se Claim*

Plaintiffs allege defamation and slander per se against the HMA Defendants. "In order to recover for defamation [in North Carolina], a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Boyce & Isley, PLLC v. Cooper*, 710 S.E.2d 309, 317 (N.C. Ct. App. 2011) (quoting *Tyson v. L'eggs Products, Inc.*, 351 S.E.2d 834, 843 (N.C. Ct. App. 1987)). "Rhetorical hyperbole and expressions of opinion not asserting provable facts are protected speech." *Daniels v. Metro Magazine Holding Co.,* LLC, 634 S.E.2d 586, 590 (N.C. Ct. App. 2006).

There are four circumstances in which a plaintiff may allege that a false publication constitutes defamation *per se*: "(1) [when the publication] charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt, or disgrace, or (4) it tends to impeach one in his trade or profession." *Ellis v. Northern Star Co*., 388 S.E.2d 127, 130 (N.C. 1990) (quoting *Flake v. News Co.*, 195

S.E.2d 55, 60–61 (N.C. 1938)); *see also Losing v. Food Lion, LLC*, 648 S.E.2d 261, 263 (N.C. Ct. App. 2007).

Plaintiffs allege that HMA's Lake Norman Hospital CEO told the Board of Directors that MEMA was replaced because its ER physicians did not want to practice quality medicine and refused to use HMA's quality program. (Doc. No. 67, at ¶¶ 198, 231). They also allege that the HMA Defendants told numerous other physicians that MEMA was terminated because of its failure to commit to HMA's quality program and because of MEMA's patient satisfaction scores. *Id.* at ¶ 231. The HMA Defendants contend that the Plaintiffs failed to allege third-party publications, that the alleged statements are privileged, non-actionable opinions, are not "of and concerning" the Doctors, and that HMA and the Hospitals cannot be liable for the intentional torts of their employees.

These alleged statements, if true, do impeach the Plaintiffs in their trade, business, or profession by implying that they were performing unsatisfactory work and were not interested in giving quality medical treatment. *See Eli Research*, 312 F. Supp. 2d at 762-63 ("Allegations that Eli is mismanaged, treats its employees and contractors unethically, and performs shoddy work can impugn Eli's corporate reputation by injuring its business goodwill."). These statements are "of and concerning" MEMA and all of its physicians and are statements of fact, not opinion. Plaintiffs have sufficiently alleged that these statements were made by agents of the HMA Defendants on behalf of HMA and the Hospitals.

There is divided authority as to whether a statement by one company's officer, agent, or employee to another officer, agent, or employee of the same company has been published if kept within the confines of the company office. Some jurisdictions hold that such communications are not communications to a third party, and therefore are not published. *See, e.g.*, 1 Robert D. Sack,

*Sack on Defamation: Libel, Slander, and Related Problems* § 2:5.4[A] (5th ed. 2019). Other courts hold that such communications may constitute publication but are likely covered by a qualified privilege. *Id.* at §2:5.4[B]. "The distinction is that a statement that is not published is not actionable; a statement that is qualifiedly privileged is actionable if the appropriate level of 'malice' on the part of the speaker is established." *Id.* North Carolina courts tend to apply the latter of the two approaches.[5] Despite the HMA Defendants' objections, the Court finds that the Plaintiffs have sufficiently pled the publication element of their defamation and slander per se claim under North Carolina substantive law. The complaint states that these statements were made "in bad faith, with malice, and with a direct intent to harm Plaintiffs" and that "[t]he HMA Defendants were aware at the time they made these statements that they were false." (Doc. No. 67, at ¶ 233). Therefore, Plaintiffs' complaint sufficiently states a claim for slander per se against the HMA Defendants.

---

[5] The HMA Defendants assert that North Carolina courts apply the "no third-party communication" approach. However, the caselaw indicates otherwise. In *Satterfield v. McLellan Stores Co.*, 2 S.E.2d 709 (N.C. 1939), the North Carolina Supreme Court refused to hold that there was a third-party communication when the plaintiff requested a separation notice and the manager dictated what to put into the separation notice to a stenographer. *Id.* at 711. The notice was sent to the plaintiff. *Id.* The court explained that while publication can happen between officers, agents, and employees of a single company, the facts of this case indicated otherwise because "[the manager and stenographer] had a duty to perform in connection with the production. Under such circumstances, the stenographer is not a third person within the contemplation of law with respect to publication of libelous matter." *Id.* It then refused to consider the question of privilege because it had already found there was no publication. *Id.*

Thus, North Carolina courts do recognize third-party publication between officers, agents, and employees of a single company in certain circumstances. Such communications are generally protected by a qualified privilege, unless a plaintiff can overcome the privilege with a showing of malice. *See, e.g.*, *Brodkin v. Novant Health, Inc.*, 824 S.E.2d 868, 874-75 (N.C. Ct. App. 2019) (holding statements made by one doctor to a hospital administrator expressing concerns about another doctor's treatment of patients was privileged); *Arnold v. Sharpe*, 251 S.E.2d 452, 456 (N.C. 1979) (noting that a qualified privilege applies when a bank employee forwarded a copy of a libelous document to the bank's president); *Hartsfield v. Harvey C. Hines Co.*, 157 S.E. 16, 19 (N.C. 1931) (applying qualified privilege to statements made between agents of one business).

*5. Civil Conspiracy Claim*

Finally, Plaintiffs claim civil conspiracy against the HMA Defendants and the EmCare Defendants. North Carolina courts do not recognize an independent cause of action for civil conspiracy. *Toomer v. Garrett*, 574 S.E.2d 76, 92 (N.C. Ct. App. 2002). "A cause of action for a civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not for the conspiracy itself." *Jackson v. Blue Dolphin Comm., LLC*, 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002); *see also Bell v. American International Ind.*, No. 1:17-cv-111, 2018 WL 2745238, at *6 n. 5 (M.D.N.C. June 7, 2018); *SouthWood v. CCDN, LLC*, Bo. 7:09-cv-81, 2016 WL 1389596, at *1 n.3 (E.D.N.C. Apr. 7, 2016). The elements of civil conspiracy are: "(1) an agreement between two or more individuals; (2) to do an unlawful act or to do a lawful act in an unlawful way; (3) resulting in injury to plaintiff inflicted by one or more of the conspirators; and (4) pursuant to a common scheme." *Piraino Bros., LLC v. Atlantic Fin. Grp., Inc.*, 712 S.E.2d 328, 333 (N.C. Ct. App. 2011).

The Magistrate Judge recommends that the motions to dismiss the civil conspiracy claim "be granted to the extent it seeks dismissal of the cause of action for civil conspiracy," but that the "dismissal be without prejudice to Plaintiffs' right to argue the remedy of joint and several liability under a theory of civil conspiracy should they prevail on one or more of the remaining claims for relief." (Doc. No. 105, at 10). The HMA Defendants and the EmCare Defendants object, arguing that Plaintiffs' civil conspiracy claim should be dismissed with prejudice. Specifically, the HMA Defendants argue that Plaintiffs released their civil conspiracy claim in a prior Settlement Agreement and that HMA could not have conspired with the Hospitals.

The Court agrees with the Magistrate Judge's recommendation. The allegations in the TAC can be fairly read as alleging that the HMA Defendants and EmCare Defendants agreed to engage

15

in a fraudulent healthcare scheme and to terminate MEMA and the Doctors when that scheme was threatened. (Doc. No. 67, ¶¶ 40, 41, 74, 245-248). Plaintiffs contend that this fraudulent scheme resulted in tortious interference with contract, violation of North Carolina's UDTPA, and retaliation against Plaintiffs for their refusal to participate in the healthcare fraud. (Doc. No. 67, ¶ 246). The Settlement Agreement, signed by the HMA Defendants and Plaintiffs, referenced claims that were reserved and released all others. (Doc. No. 96-1, at 17). Because the Court is dismissing the independent claim of civil conspiracy, and only allowing it as a theory of liability as to damages, it is not covered by the Settlement Agreement. Defendants were aware of the allegations and potential damages against them at the time the Settlement Agreement was signed, and civil conspiracy is not a new independent cause of action.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. The Magistrate Judge's M&R, (Doc. No. 105), is **ADOPTED**; and

2. HMA Defendants' Motion, (Doc. No. 81), is **GRANTED IN PART** and **DENIED IN PART**; and

3. EmCare Defendants' Motion, (Doc. No. 86), is **GRANTED IN PART** and **DENIED IN PART**; and

4. Defendant Community Health System, Inc.'s Motion, (Doc. No. 95), is **DENIED AS MOOT.**

Signed: October 24, 2019

Kenneth D. Bell
United States District Judge