# PLAINTIFFS' EXHIBIT 36

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS), the Defense Health Agency (DHA), acting on behalf of the TRICARE Program, Emergency Medical Services Corporation, EmCare, Inc., its subsidiaries and affiliates (collectively "EmCare"), and Relators Thomas L. Mason, M.D., Steven G. Folstad, M.D., Mid-Atlantic Emergency Medical Associates (MEMA), J. Michael Cowling, and Jacqueline Meyer (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A.       EmCare contracts to provide qualified physicians and related medical professionals to staff Emergency Departments (ED) and provide inpatient hospitalist services to hospitals throughout the United States.  EmCare, at various dates between January 1, 2008 and December 31, 2012, had contracts to provide ED physicians at 37 hospitals owned or operated by Health Management Associates (HMA), a Delaware corporation that was headquartered in Naples, Florida, until it was acquired by Community Health Systems on January 27, 2014.  In addition, EmCare, at various dates between January 1, 2008 and December 31, 2012, had contracts to provide hospitalist physicians to provide services at five HMA hospitals. Attachment A lists the HMA hospitals that had ED contracts with EmCare and the dates thereof. Attachment B lists the HMA hospitals that had hospitalist contracts with EmCare and the dates thereof.

B.       On September 23, 2010, Thomas Mason, M.D., Stephen Folstad, M.D. and their medical practice, MEMA (collectively, "the MEMA Relators"), filed a *qui tam* action in the United States District Court for the Western District of North Carolina, captioned *United States*

- 1 -

& *the States of North Carolina, Florida, Georgia, Oklahoma, Tennessee & Texas ex rel. Mason, Folstad & MEMA v. Health Mgmt. Assocs., Mooresville Hosp. Mgmt. Assocs., LLC d/b/a Lake Norman Med. Ctr., Statesville HMA LLC d/b/a Davis Reg'l Med. Ctr., Emergency Med. Servs., Corp., EmCare Inc., EmCare Holdings, Inc.*, *and Emergency Med. Servs., L.P.*, No.  3:10-cv-472, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the MEMA Civil Action).  On January 9, 2013, Relators Thomas Mason, M.D., Stephen Folstad, M.D. and their medical practice, MEMA filed their severed second amended complaint ("the MEMA severed SAC") in the United States District Court for the Western District of North Carolina. On December 16, 2013, the United States intervened in the MEMA Civil Action with regard to certain claims against the HMA defendants, and sought an extension of time to make an intervention decision regarding the EmCare defendants.

C.      On July 15, 2011, Jacqueline Meyer and Michael Cowling (collectively, "the Meyer Relators") filed a *qui tam* action in the United States District Court for the District of South Carolina, captioned *United States & the States of Florida, Georgia, North Carolina, Oklahoma, Tennessee & Texas ex rel. Meyer and Cowling v. Health Mgmt. Assocs., Gary D. Newsome, Emergency Med. Servs. Corp. & EmCare, Inc.*, No. 0-11-cv-01713-JA, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Meyer Civil Action). On December 16, 2013, the United States intervened in the Meyer Civil Action with regard to certain claims against the HMA defendants and Newsome, and sought an extension of time to make an intervention decision regarding the EmCare defendants.

D.      Relators allege that because ED physicians at HMA hospitals generally did not have admitting privileges, the ED physicians had to call the patient's attending physician or the assigned hospitalist physician to recommend inpatient admission.  Relators allege, *inter alia*, that HMA and EmCare pressured EmCare ED physicians to recommend admission for Medicare

- 2 -

United States – EmCare Settlement Agreement

patients without regard to the medical necessity of inpatient admission. Relators allege that HMA discouraged the use of observation status for ED patients in favor of higher-paying inpatient admissions. Relators further allege that EmCare conspired with and caused HMA hospitals to submit claims to Medicare, Medicaid and the TRICARE program for medically unnecessary inpatient admissions from their EDs. Additionally, Relators allege that EmCare ED physicians' recommendations of inpatient admission to admitting physicians caused HMA to submit medically unnecessary inpatient claims for services that should have been billed as outpatient services. Relators also allege that HMA offered and provided remuneration to EmCare to induce EmCare to cause its physicians to recommend inpatient admission for ED patients whose condition did not warrant inpatient admission. Relators allege that inpatient admissions from the ED increased at the HMA hospitals that also contracted with EmCare to provide hospitalist services. Relators Meyer and Cowling further allege that HMA and EmCare agreed that EmCare hospitalists would not refuse an inpatient admission recommendation from an EmCare ED physician.

E.      On January 14, 2014, the United States filed a motion with the Judicial Panel on Multidistrict Litigation to consolidate the MEMA and Meyer Civil Actions with seven other False Claims Act *qui tam* actions. On April 2, 2014, the Judicial Panel on Multidistrict Litigation granted the United States' motion and assigned the cases to the Honorable Reggie Walton, United States District Judge for the District of the District of Columbia, for pre-trial proceedings. The HMA MDL is Miscellaneous Action No. 14-339 (RBW), MDL Docket No. 2524. Within the MDL, the MEMA Civil Action is assigned Case No. 1:14-cv-579 and the Meyer Civil Action is assigned Case No. 1:14-cv-586.

F.      The United States contends that EmCare caused HMA hospitals to submit claims for payment to the Medicare Program, Title XVIII of the Social Security Act, 42 U.S.C.

United States – EmCare Settlement Agreement

§§ 1395-1395kkk-1 ("Medicare"), the Medicaid Program, 42 U.S.C. §§ 1396-1396w-5

("Medicaid"); and the TRICARE Program, 10 U.S.C. §§ 1071-1110b ("TRICARE")

(collectively "Government Healthcare Programs").

      G.     In order to resolve claims filed pursuant to the *qui tam* provisions of state false

claims laws asserted in the MEMA Civil Action and the Meyer Civil Action, EmCare will be

entering into separate settlement agreements (the Medicaid State Settlement Agreements) with

certain states.  The states that enter into the Medicaid State Settlement Agreements with EmCare

(the Medicaid Participating States) will be receiving settlement funds from EmCare pursuant to

Paragraph 1(b) below.

      H.     <u>Covered Conduct</u>:  The United States contends that it has certain civil claims

against EmCare arising from the following conduct during the contract time periods specified on

Attachments A and B (hereinafter referred to as the "Covered Conduct"):

      1.   <u>Medically Unnecessary Emergency Department Admissions</u>

      From January 1, 2008 through December 31, 2012, EmCare conspired with HMA

hospitals to submit or caused HMA hospitals to submit claims for payment to the Government

Healthcare Programs for certain inpatient admissions of Government Healthcare Program

beneficiaries that were medically unnecessary and should have been billed as outpatient or

observation services.  Specifically, certain inpatient admission recommendations made by

EmCare ED physicians to admitting physicians, including but not limited to EmCare hospitalists,

at HMA hospitals caused the medically unnecessary admission of Government Healthcare

Program beneficiaries.  Further, the United States alleges that certain inpatient admission

decisions of EmCare hospitalists, whether acting on the recommendation of EmCare ED

physicians or other ED physicians, or on their own initiative, caused medically unnecessary

admissions of Government Healthcare Program beneficiaries.  The Covered Conduct in this

- 4 -

United States – EmCare Settlement Agreement

Recital H.1. is specifically limited to claims submitted by the HMA hospitals listed on

Attachments A and B during the time periods of their EmCare contracts that were related to the

inpatient admission and treatment of Government Healthcare Program beneficiaries that meet all

of the following criteria:

> (a) For beneficiaries who originally presented to the ED of the HMA
> hospitals;
>
> (b) For beneficiaries whose length of stay after inpatient admission was two
> (2) days or less;
>
> (c) For beneficiaries who were 65 years or older at the time they originally
> presented to the ED of an HMA hospital;
>
> (d) For beneficiaries who were not transferred or discharged to another acute
> care facility, did not leave the HMA hospital to which they originally
> presented against medical advice, and did not die while in a HMA
> hospital; and
>
> (e) That were billed to the Government Healthcare programs under one of the
> following Medical Severity DRGs ("MS-DRGs"):
>
>> (i) MS-DRG 069 (transient ischemia); 149 (disequilibrium), 192
>> (chronic obstructive pulmonary disease without CC/MCC); 195
>> (simple pneumonia and pleurisy without CC/MCC), 203
>> (bronchitis and asthma without CC/MCC), 204 (respiratory signs
>> and symptoms),  293 (heart failure and shock without CC/MCC);
>> 303 (atherosclerosis without MCC), 305 (hypertension without
>> MCC),  310 (cardiac arrhythmia & conduction disorder without
>> CC/MCC); 312 (syncope and collapse); 313 (chest pain); 392

United States – EmCare Settlement Agreement

(esophagitis, gastroenteritis and miscellaneous digestive disorders without MCC); 639 (diabetes without CC/MCC), 641 (nutritional and miscellaneous metabolic disorders without MCC); 690 (kidney and urinary tract infections without MCC), 812 (red blood cell disorders without MCC) and 948 (signs and symptoms without MCC).

(ii)    For hospitals acquired by HMA during the covered period of January 1, 2008 through December 31, 2012, claims for services rendered 365 days after the facility was acquired by HMA through December 31, 2012.  The relevant time period for each EmCare contract with each HMA hospital is listed on Attachments A and B.

(f)    For Medicare claims only, inpatient admissions billed and paid under fee for service Medicare Part A, where Medicare was the primary payor of the claim and the claim resulted in payment by Medicare.

(g)    For Medicaid claims only, inpatient admissions of Medicare-Medicaid dual eligible patients billed and paid under fee for service Medicare Part A and the Medicaid program of one of the States, and the claim resulted in payment by Medicaid.

(h)    For TRICARE claims only, inpatient admissions of Medicare-TRICARE dual eligible patients billed and paid under fee for service Medicare Part A and TRICARE, and the claim resulted in payment by TRICARE.

United States – EmCare Settlement Agreement

2.   Violations of the Medicare and Medicaid Anti-Kickback Statute

The United States contends that HMA offered and provided remuneration to EmCare, in the form of service contracts and payments, in return for ED physician inpatient admission recommendations of Government Healthcare Program beneficiaries made without regard to the medical necessity of admission, in violation of the Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. § 1320-7b(b).  The illegal remuneration included the award of service contracts, the retention of service contracts that HMA threatened to terminate unless ED admissions increased, payments under the HMA-EmCare hospital ED physician and hospitalist contracts, and bonus payments made to ED physicians where the bonuses were tied, in part, to meeting numerical targets for the percentage of attending physicians called by the ED physician.

I.   This Settlement Agreement is neither an admission of liability by EmCare nor a concession by the United States and Relators that their claims are not well founded.

J.   Relators claim entitlement under 31 U.S.C. § 3730(d) and analogous provisions of state false claims laws to a share of the proceeds of this Settlement Agreement, the Medicaid State Settlement Agreements, and to each Relator's reasonable expenses, attorneys' fees and costs.

K.   To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1.   EmCare shall pay to the United States and the Medicaid Participating States, collectively, the sum of twenty-nine million, eight hundred thousand dollars ($29,800,000), plus interest accruing since September 8, 2015 at a rate of 2.125 percent, continuing until and including the day of payment (Settlement Amount).  The Settlement Amount shall constitute a

- 7 -

debt immediately due and owing to the United States and the Medicaid Participating States on the effective date of this Agreement.  This debt shall be discharged by payments to the United States and the Medicaid Participating States, under the following terms and conditions: (a) EmCare shall pay to the United States the sum of $29,632,891, plus accrued interest as set forth above (Federal Settlement Amount).  The Federal Settlement Amount shall be paid no later than 10 days after the Effective Date of this Agreement by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the United States Department of Justice; and (b) No later than 10 days after the Effective Date of this Agreement, EmCare shall deposit the sum of $167,109, plus accrued interest as set forth above (Medicaid State Settlement Amount) into one or more interest-bearing money market or bank accounts that are held in the name of EmCare, but segregated from other EmCare accounts (the State Settlement Accounts), and make payment from the State Settlement Accounts to the Medicaid Participating States pursuant to written instructions from the NAMFCU Negotiating Team and under the terms and conditions of the Medicaid State Settlement Agreements that EmCare will enter into with the Medicaid Participating States.

2.      Conditioned upon the United States receiving the Federal Settlement Amount from EmCare and as soon as feasible after receipt, the United States shall pay $ 6,222,907.11 plus pro rata accrued interest to Relators Mason, Folstad and MEMA by electronic funds transfer.

3.      The Settlement Amount does not include the MEMA Relators' or the Meyer Relators' expenses, attorneys' fees and costs, pursuant to 31 U.S.C. § 3730(d).  In settlement of the Meyer Relators' claims against EmCare for expenses, attorneys' fees and costs, and Relator Meyer's claim against EmCare for wrongful termination under 31 U.S.C. § 3730(h), EmCare and

the Meyer Relators have entered into a separate Agreement executed on May 21, 2017 (Meyer Relators-EmCare Agreement).

4.     Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon EmCare's full payment of the Federal Settlement Amount, the United States releases EmCare from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of payment by mistake, unjust enrichment, and fraud.

5.     Subject to the exceptions in Paragraph 8 (concerning excluded claims) below, and conditioned upon EmCare's full payment of the Federal Settlement Amount, Relators, for themselves and for their heirs, successors, attorneys, agents, and assigns, release EmCare from any civil monetary claim the Relators have on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

6.     In consideration of the obligations of EmCare in this Agreement and the Corporate Integrity Agreement (CIA), entered into between OIG-HHS and Envision Healthcare Corporation, and conditioned upon EmCare's full payment of the Federal Settlement Amount, the OIG-HHS agrees to release and refrain from instituting, directing, or maintaining any administrative action seeking exclusion from Medicare, Medicaid, and other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) against EmCare under 42 U.S.C. § 1320a-7a (Civil Monetary Penalties Law) or 42 U.S.C. § 1320a-7(b)(7) (permissive exclusion for fraud, kickbacks, and other prohibited activities) for the Covered Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims), below.  The OIG-HHS expressly reserves all rights to comply with any statutory obligations to exclude EmCare from Medicare, Medicaid, and other Federal health care programs under 42 U.S.C. § 1320a-7(a) (mandatory

- 9 -

exclusion) based upon the Covered Conduct.  Nothing in this Paragraph precludes the OIG-HHS

from taking action against entities or persons, or for conduct and practices, for which claims

have been reserved in Paragraph 8, below.

      7.      In consideration of the obligations of EmCare set forth in this Agreement, and

conditioned upon EmCare's full payment of the Federal Settlement Amount, DHA agrees to

release and refrain from instituting, directing, or maintaining any administrative action seeking

exclusion from the TRICARE Program against EmCare under 32 C.F.R. § 199.9 for the Covered

Conduct, except as reserved in this Paragraph and in Paragraph 8 (concerning excluded claims),

below.  DHA expressly reserves authority to exclude EmCare from the TRICARE Program

under 32 C.F.R. §§ 199.9 (f)(1)(i)(A), (f)(1)(i)(B), and (f)(1)(iii) (mandatory exclusion), based

upon the Covered Conduct.  Nothing in this Paragraph precludes DHA or the TRICARE

Program from taking action against entities or persons, or for conduct and practices, for which

claims have been reserved in Paragraph 8, below, and as reserved in this Paragraph.

      8.      Notwithstanding the releases given in paragraphs 4 through 7 of this Agreement

or any other term of this Agreement, the following claims of the United States are specifically

reserved and are not released:

        a.      Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

        b.      Any criminal liability;

        c.      Except as explicitly stated in this Agreement, any administrative liability,

              including mandatory exclusion from Federal health care programs;

        d.      Any liability to the United States (or its agencies) for any conduct other

              than the Covered Conduct;

        e.      Any liability based upon obligations created by this Agreement;

      f.     Any liability of any other defendants named in the MEMA or Meyer Civil Actions;

      g.    Any liability of individuals;

      h.    Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

      i..    Any liability for failure to deliver goods or services due; and

      j.    Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

9.     Relators and their heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon receipt by Relators MEMA, Mason, and Folstad of the payment described in Paragraph 2, each of the MEMA Relators and Meyer Relators and their heirs, successors, attorneys, agents, and assigns fully and finally releases, waives, and forever discharges the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the MEMA and Meyer Civil Actions or under 31 U.S.C. § 3730, and from any claims to a share of the Federal Settlement Amount and/or the MEMA and Meyer Civil Actions with respect to claims Relators have asserted or could have asserted on behalf of the United States against EmCare.

10.    In consideration of and conditioned upon EmCare's full payment of the Federal Settlement Amount, and EmCare's full payment of the amounts set forth in the Meyer Relators-EmCare Agreement, the Meyer Relators, for themselves, and for their heirs, successors, attorneys, agents, and assigns, release EmCare, and its officers, agents, and employees, from any

- 11 -

liability to Relators from the filing of the Civil Action, or under 31 U.S.C. § 3730(d) for expenses or attorney's fees and costs.

11.     EmCare waives and shall not assert any defenses EmCare may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

12.     EmCare fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that EmCare has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

13.     EmCare fully and finally releases each Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that EmCare has asserted, could have asserted, or may assert in the future against each Relator, related to the Covered Conduct and each Relator's investigation and prosecution thereof.

14.     The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare or TRICARE contractor (e.g., Medicare Administrative Contractor, fiscal intermediary, carrier) or any state payer, related to the Covered Conduct; and EmCare agrees not to resubmit to any Medicare or TRICARE

United States – EmCare Settlement Agreement

contractor or any state payer any previously denied claims related to the Covered Conduct, agrees not to appeal any such denials of claims, and agrees to withdraw any such pending appeals.

15.    EmCare agrees to the following:

a.    <u>Unallowable Costs Defined</u>: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395kkk-1 and 1396-1396w-5; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of EmCare, its present or former officers, directors, employees, shareholders, and agents in connection with:

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3)    EmCare's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment EmCare makes to the United States pursuant to this Agreement and any payments that EmCare may make to the Relators, including costs and attorneys' fees; and

(6)    the negotiation of, and obligations undertaken pursuant to the CIA to: (i) retain an independent review organization to perform annual reviews as described in Section III of the CIA; and (ii) prepare and submit reports to the OIG-HHS

- 13 -

are unallowable costs for government contracting purposes and under the Medicare Program,

Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program

(FEHBP) (hereinafter referred to as Unallowable Costs).  However, nothing in paragraph 15.a.(6)

that may apply to the obligations undertaken pursuant to the CIA affects the status of costs that

are not allowable based on any other authority applicable to EmCare.

   b. <u>Future Treatment of Unallowable Costs</u>:  Unallowable Costs shall be

separately determined and accounted for by EmCare, and EmCare shall not charge such

Unallowable Costs directly or indirectly to any contracts with the United States or any State

Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost

statement, information statement, or payment request submitted by EmCare or any of its

subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

   c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>:

EmCare further agrees that within 90 days of the Effective Date of this Agreement it shall

identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors,

and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph)

included in payments previously sought from the United States, or any State Medicaid program,

including, but not limited to, payments sought in any cost reports, cost statements, information

reports, or payment requests already submitted by EmCare or any of its subsidiaries or affiliates,

and shall request, and agree, that such cost reports, cost statements, information reports, or

payment requests, even if already settled, be adjusted to account for the effect of the inclusion of

the Unallowable Costs.  EmCare agrees that the United States, at a minimum, shall be entitled to

recoup from EmCare any overpayment plus applicable interest and penalties as a result of the

inclusion of such Unallowable Costs on previously-submitted cost reports, information reports,

cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by EmCare or any of its subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on EmCare or any of its subsidiaries or affiliates' cost reports, cost statements, or information reports.

d.      Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine EmCare's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

16.      EmCare agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, EmCare shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. EmCare further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

17.      This Agreement is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 18 (waiver for beneficiaries paragraph), below.

18.      EmCare agrees that it waives and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents,

- 15 -

sponsors, legally responsible individuals, or third party payors based upon the claims defined as

Covered Conduct.

 19. Upon receipt of the payment described in Paragraph 1 above, the United States

shall promptly intervene in each of the Civil Actions and the United States and the Relators shall

  a. Promptly sign and file in each of the Civil Actions Joint Stipulations of Dismissal

  of the Claims against EmCare pursuant to Rule 41(a)(1) in the form provided in

  Attachments C and D, as well as a Proposed Order in the form provided in

  Attachments E and F;

  b. Provided, however, that the following claims shall not be dismissed, unless they

  are settled, adjudicated, or otherwise resolved, and any required consent by the United

  States is obtained, and the Courts are so informed:

   i. Claims the MEMA Relators may have for reasonable attorneys' fees,

   expenses, and costs pursuant to 31 U.S.C. § 3730(d), analogous state

   FCA statutes, and under state law for Counts X through XII of the

   SAC;

   ii. Claims the MEMA Relators have under § 3730(h), comparable state

   laws, and under state law for Counts X through XII of the SAC; and

   iii. The MEMA and Meyer Relators' claims for a relator's share under

   the Medicaid state settlement agreements;

 20. Except for the claims that are resolved by the Meyer Relators-EmCare

Agreement, and except for the Relators' claims for attorneys' fees and costs that are expressly

reserved in Paragraph 19(b)(i) and (ii) above, each Party shall bear its own legal and other costs

incurred in connection with this matter, including the preparation and performance of this

Agreement.

21.     Each party and signatory to this Agreement represents that he, she or it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

22.     This Agreement is governed by the laws of the United States.  The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of Columbia, except for disputes arising from those claims excluded under Paragraph 19 of this Agreement that may be remanded to another district court pursuant to 28 U.S.C. § 1407(a).  For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

23.     This Agreement constitutes the complete agreement between the Parties.  This Agreement may not be amended except by written consent of the Parties.

24.     The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

25.     This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

26.     This Agreement is binding on EmCare's successors, transferees, heirs, and assigns.

27.     This Agreement is binding on Relators' successors, transferees, heirs, and assigns.

28.     All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

29.     This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement).  Facsimiles and electronic transmissions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: 12/18/7          BY: _____

Marie V. Bonkowski
Laurie A. Oberembt
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice


DATED: _____          BY: _____

Jonathan Ferry
Assistant United States Attorney
Western District of North Carolina


DATED: _____          BY: _____

Jennifer Aldrich
Assistant United States Attorney
District of South Carolina


DATED: _____          BY: _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services


DATED: _____          BY: _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

- 18 -

## THE UNITED STATES OF AMERICA

DATED: _____          BY: _____
                               Marie V. Bonkowski
                               Laurie A. Oberembt
                               Senior Trial Counsel
                               Commercial Litigation Branch
                               Civil Division
                               United States Department of Justice

DATED: *12-11-17*          BY: _____
                               Jonathan Ferry
                               Assistant United States Attorney
                               Western District of North Carolina

DATED: _____          BY: _____
                               Jennifer Aldrich
                               Assistant United States Attorney
                               District of South Carolina

DATED: _____          BY: _____
                               Lisa M. Re
                               Assistant Inspector General for Legal Affairs
                               Office of Counsel to the Inspector General
                               Office of Inspector General
                               United States Department of Health and Human Services

DATED: _____          BY: _____
                               LEIGH A. BRADLEY
                               General Counsel
                               Defense Health Agency
                               United States Department of Defense

- 18 -

## THE UNITED STATES OF AMERICA

DATED: _____        BY:    _____
                                 Marie V. Bonkowski
                                 Laurie A. Oberembt
                                 Senior Trial Counsel
                                 Commercial Litigation Branch
                                 Civil Division
                                 United States Department of Justice


DATED: _____        BY:    _____
                                 Jonathan Ferry
                                 Assistant United States Attorney
                                 Western District of North Carolina


DATED: 12/11/17           BY:    *Jennifer Aldrich*
                                 Jennifer Aldrich
                                 Assistant United States Attorney
                                 District of South Carolina


DATED: _____        BY:    _____
                                 Lisa M. Re
                                 Assistant Inspector General for Legal Affairs
                                 Office of Counsel to the Inspector General
                                 Office of Inspector General
                                 United States Department of Health and Human Services


DATED: _____        BY:    _____
                                 LEIGH A. BRADLEY
                                 General Counsel
                                 Defense Health Agency
                                 United States Department of Defense

- 18 -

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____

Marie V. Bonkowski
Laurie A. Oberembt
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice

DATED: _____     BY: _____

Jonathan Ferry
Assistant United States Attorney
Western District of North Carolina

DATED: _____     BY: _____

Jennifer Aldrich
Assistant United States Attorney
District of South Carolina

DATED: 12/5/17     BY: Lisa M. Re _____

Lisa M. Re
Assistant Inspector General for Legal Affairs
Office of Counsel to the Inspector General
Office of Inspector General
United States Department of Health and Human Services

DATED: _____     BY: _____

LEIGH A. BRADLEY
General Counsel
Defense Health Agency
United States Department of Defense

- 18 -

## THE UNITED STATES OF AMERICA

DATED: _____     BY: _____
                            Marie V. Bonkowski
                            Laurie A. Oberembt
                            Senior Trial Counsel
                            Commercial Litigation Branch
                            Civil Division
                            United States Department of Justice


DATED: _____     BY: _____
                            Jonathan Ferry
                            Assistant United States Attorney
                            Western District of North Carolina


DATED: _____     BY: _____
                            Jennifer Aldrich
                            Assistant United States Attorney
                            District of South Carolina


DATED: _____     BY: _____
                            Lisa M. Re
                            Assistant Inspector General for Legal Affairs
                            Office of Counsel to the Inspector General
                            Office of Inspector General
                            United States Department of Health and Human Services


                       BLEY.PAUL.NICHO   Digitally signed by
                                         BLEY.PAUL.NICHOLAS.1099873821
                                         DN: c=US, o=U.S. Government, ou=DoD,
DATED: 12/6/2017       BY: LAS.1099873821   ou=PKI, ou=DHA,
                                         cn=BLEY.PAUL.NICHOLAS.1099873821
                                         Date: 2017.12.06 09:45:06 -05'00'
                           _____
                           LEIGH A. BRADLEY
                           General Counsel
                       for Defense Health Agency
                           United States Department of Defense

- 18 -

**EmCare**

DATED: 12/15/17   BY: _____
Craig Wilson
General Counsel, Envision Healthcare, Inc.

DATED: 12/15/17   BY: _____
David Matyas
Epstein, Becker & Green, PC

2

### RELATORS

### Relator Thomas L. Mason, M.D., FACEP

DATED: 12| 12|17        BY: _~Tmaso~_____
                                  Thomas L. Mason

### Relator Steven G. Folstad, M.D., FACEP

DATED: _____        BY: _____
                                  Steven G. Folstad, M.D.

### Relator Mid-Atlantic Emergency Medical Associates, P.A.

DATED: _____        BY: _____
                                  **Timothy E. Lietz, MD, FACEP, President/CEO**
                                  Mid-Atlantic Emergency Medical Associates, P.A.

DATED: 12-7-            BY: _Marc S. Raspanti_____
        2017                      PIETRAGALLO GORDON ALFANO
                                   BOSICK & RASPANTI, LLP
                                  Marc S. Raspanti, Esquire
                                  Pamela Coyle Brecht, Esquire
                                  Michael A. Morse, Esquire

                                  _____
                                  WYATT & BLAKE, LLP
                                  James F. Wyatt, III, Esquire

- 20 -

## RELATORS

### Relator Thomas L. Mason, M.D., FACEP

DATED: _____        BY:  _____
                              Thomas L. Mason

### Relator Steven G. Folstad, M.D., FACEP

DATED: 12/9/17        BY: _____
                              Steven G. Folstad, M.D.

### Relator Mid-Atlantic Emergency Medical Associates, P.A.

DATED: _____        BY: _____
                              **Timothy E. Lietz, MD, FACEP, President/CEO**
                              Mid-Atlantic Emergency Medical Associates, P.A.

DATED: 12-7-2017        BY: _____
                              PIETRAGALLO GORDON ALFANO
                               BOSICK & RASPANTI, LLP
                              Marc S. Raspanti, Esquire
                              Pamela Coyle Brecht, Esquire
                              Michael A. Morse, Esquire

                              _____
                              WYATT & BLAKE, LLP
                              James F. Wyatt, III, Esquire

- 20 -

## RELATORS

### Relator Thomas L. Mason, M.D., FACEP

DATED: _____     BY: _____
                           Thomas L. Mason

### Relator Steven G. Folstad, M.D., FACEP

DATED: _____     BY: _____
                           Steven G. Folstad, M.D.

### Relator Mid-Atlantic Emergency Medical Associates, P.A.

DATED: 12/7/2017     BY: _____
                           **Timothy E. Lietz, MD, FACEP, President/CEO**
                           Mid-Atlantic Emergency Medical Associates, P.A.

DATED: 12-7-
       2017         BY: _____
                           PIETRAGALLO GORDON ALFANO
                            BOSICK & RASPANTI, LLP
                           Marc S. Raspanti, Esquire
                           Pamela Coyle Brecht, Esquire
                           Michael A. Morse, Esquire

                           _____
                           WYATT & BLAKE, LLP
                           James F. Wyatt, III, Esquire

- 20 -

**RELATORS**

**Relator Thomas L. Mason, M.D., FACEP**

DATED: _____     BY: _____
                             Thomas L. Mason

**Relator Steven G. Folstad, M.D., FACEP**

DATED: _____     BY: _____
                             Steven G. Folstad, M.D.

**Relator Mid-Atlantic Emergency Medical Associates, P.A.**

DATED: _____     BY: _____
                             **Timothy E. Lietz, MD, FACEP, President/CEO**
                             Mid-Atlantic Emergency Medical Associates, P.A.

DATED: _____     BY: _____
                             PIETRAGALLO GORDON ALFANO
                              BOSICK & RASPANTI, LLP
                             Marc S. Raspanti, Esquire
                             Pamela Coyle Brecht, Esquire
                             Michael A. Morse, Esquire

                             _____
                             WYATT & BLAKE, LLP
                             James F. Wyatt, III, Esquire

- 20 -

Counsel for Relators Thomas L. Mason, MD, Steven G.
Folstad, MD and Mid-Atlantic Emergency Medical
Associates, P.A.

**Relator Jacqueline Meyer**

DATED: 12/13/2017        BY: _Jacqueline Meyer_
                              Jacqueline Meyer

**Relator Michael Cowling**

DATED: _____       BY: _____
                              Michael Cowling

DATED: 12.13.17          BY: _____
                              VOGEL, SLADE & GOLDSTEIN, LLP
                              Janet L. Goldstein, Esquire

                              _____
                              WYCHE, PA
                              John C. Moylan, Esquire

                              Counsel for Relators Jacqueline Meyer
                              and Michael Cowling

Counsel for Relators Thomas L. Mason, MD, Steven G. Folstad, MD and Mid-Atlantic Emergency Medical Associates, P.A.

**Relator Jacqueline Meyer**

DATED: _____        BY: _____
                            Jacqueline Meyer

**Relator Michael Cowling**

DATED: 12/13/2017      BY: _____
                            Michael Cowling

DATED: 12.13.17        BY: _____
                            VOGEL, SLADE & GOLDSTEIN, LLP
                            Janet L. Goldstein, Esquire

                            _____
                            WYCHE, PA
                            John C. Moylan, Esquire

Counsel for Relators Jacqueline Meyer and Michael Cowling

Attachment A to United States – EmCare Settlement Agreement

| EmCare- HMA Emergency Department Contracts | | |
|---|---|---|
| **HMA Hospital Name** | **Contract Start** | **End Date** |
| Biloxi Regional Medical Center | 4/1/2009 | 9/11/2011 |
| Brooksville Regional Hospital | 1/1/2008 | 4/16/2016 |
| Carlisle Regional Medical Center | 5/1/2008 | 2/29/2012 |
| Carolina Pines Regional Medical Center | 9/30/2007 | 12/1/2010 |
| Central Mississippi Medical Center | 8/1/2007 | 8/31/2011 |
| Charlotte Regional Medical Center | 1/1/2002 | 12/31/2012 |
| Chester Regional Medical Center | 9/1/2006 | 7/1/2011 |
| Crossgates River Oaks | 6/1/2008 | 6/15/2011 |
| Dallas Regional Medical Center | 1/1/1980 | 6/14/2011 |
| Fisherman's Hospital | 11/1/2010 | 07/01/2011 |
| Franklin Regional Medical Center | 11/1/2007 | 2/1/2010 |
| Gilmore Memorial Regional Medical | 7/1/2004 | 8/31/2011 |
| Heart of Lancaster Regional Medical | 6/1/2003 | 12/31/2012 |
| Highlands Regional Medical Center | 5/1/2008 | 5/31/2010 |
| Lake Norman Regional Medical Center | 10/30/2010 | 10/1/2011 |
| Lancaster Regional Medical Center | 6/1/2003 | 11/30/2012 |
| Lehigh Regional Medical Center | 5/1/2002 | 10/11/2015 |
| Lower Keys Medical Center | 4/1/2009 | 3/31/2015 |
| Madison County Medical Center | 7/1/2007 | 8/31/2011 |
| Medical Center of SE Oklahoma | 3/15/2009 | 3/4/2012 |
| Mesquite Community Hospital | 03/01/2004 | 06/01/2008 |
| Natchez Community Hospital | 11/1/2004 | 9/30/2011 |
| Pasco Regional Medical Center | 11/1/2004 | 9/1/2011 |
| Poplar Bluff Regional Medical Center | 8/1/2006 | 1/1/2011 |
| Riley (Meridian) | 9/1/2006 | 12/31/2010 |
| River Oaks Hospital | 10/1/2008 | 8/31/2011 |
| Riverview Regional Medical Center | 8/11/2008 | 11/30/2010 |
| Sandhills Regional Medical Center | 3/1/1992 | 11/14/2011 |
| Sebastian River Medical Center | 11/1/2006 | 12/31/2012 |
| Sparks Regional Medical Center* | 2/1/2010 | 2/9/2013 |
| Spring Hill Regional Hospital | 01/01/2008 | 04/14/2016 |
| Stringfellow Memorial Hospital | 4/10/2009 | 11/15/2010 |
| Summit Medical Center | 10/1/2009 | 9/30/2012 |

1

**Attachment A to United States – EmCare Settlement Agreement**

| | | |
|---|---|---|
| Toppenish Community Hospital | 11/1/2007 | 10/31/2010 |
| Twin Rivers Regional Medical Center | 5/1/2007 | 4/30/2010 |
| University Medical Center | 6/30/2010 | 6/29/2013 |
| Upstate Carolina Medical Center | 7/1/2008 | 9/1/2009 |
| Yakima Regional Medical & Cardiac | 6/3/2005 | 11/30/2010 |

2

Attachment B

| EmCare Hospitalist Contracts with HMA Hospitals | | | |
|---|---|---|---|
| Hospital | City, State | Contract Start | Contract End |
| Carlisle Regional Medical Center | Carlisle, PA | 9/1/2010 | 2/12/2012 |
| East Georgia Regional Medical Center | Statesboro, GA | 5/1/2010 | 7/31/2012 |
| Highlands Regional Medical Center | Sebring, FL | 5/1/2008 | 5/31/2010 |
| Lake Norman Regional Medical Center | Mooresville, NC | 10/30/2010 | 8/1/2011 |
| Sebastian River Medical Center | Sebastian, FL | 10/1/2008 | 12/31/2014 |

**Attachment C**

**[Insert caption for the Mason case]**

## JOINT STIPULATION OF DISMISSAL OF CLAIMS AGAINST EMCARE, INC.

Plaintiffs the United States of America and Relators Thomas L. Mason, M.D., Steven G. Folstad, M.D., Mid-Atlantic Emergency Medical Associates (MEMA), and Defendants Emergency Medical Services Corporation, EmCare, Inc., and their subsidiaries and affiliates (collectively "EmCare"), acting by and through their respective counsel of record (collectively, "the Parties"), pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the False Claims Act, 31 U.S.C. §3730(b)(1), hereby stipulate as follows:

In accordance with the terms of the Settlement Agreement among the parties dated December __, 2017 (Doc. ___) (the "Settlement Agreement"), the Parties hereby stipulate to the entry of an order dismissing with prejudice as to the United States its claims based on the Covered Conduct released in the Settlement Agreement, and without prejudice as to any other claims the United States may have against EmCare. The Parties further stipulate to entry of an order dismissing with prejudice as to Relators all claims asserted on behalf of the United States and Relators against EmCare in the above-captioned action, except the following claims excluded under Paragraph 19 of the Settlement Agreement shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States is obtained, and the Court is so informed:

> (1)    Claims that Relators have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and analogous state

FCA statutes, and under state law for Counts X through XII of the Second Amended Complaint;

(2)   Claims that the Relators have under § 3730(h), comparable state laws, and under state law for Counts X through XII of the Second Amended Complaint; and

(3)   Claims that the Relators have for a relator's share under the Medicaid State Settlement Agreements which will be separately entered into by EmCare, the States, and the Relators.

WHEREFORE, for the foregoing reasons, the Parties respectfully request that the Court enter an order in the form of the attached proposed order.

Respectfully submitted,

**[INSERT SIGNATURE BLOCK OF ALL COUNSEL]**

- 2-

**Attachment D**

**[Insert caption for the Meyer and Cowling case]**

## JOINT STIPULATION OF DISMISSAL OF CLAIMS AGAINST EMCARE, INC.

Plaintiffs the United States of America and Relators J. Michael Cowling and Jacqueline Meyer, and the defendants Emergency Medical Services Corporation, EmCare, Inc., and their subsidiaries and affiliates (collectively "EmCare"), acting by and through their respective counsel of record (collectively, "the Parties"), pursuant to Rule 41(a) of the Federal Rules of Civil Procedure and the *qui tam* provisions of the False Claims Act, 31 U.S.C. §3730(b)(1), hereby stipulate as follows:

In accordance with the terms of the Settlement Agreement among the parties dated December __, 2017 (Doc. ___) (the "Settlement Agreement"), the Parties hereby stipulate to the entry of an order dismissing with prejudice as to the United States its claims for the Covered Conduct released in the Settlement Agreement, and without prejudice as to any other claims the United States may have against EmCare. The Parties further stipulate to the entry of an order dismissing with prejudice as to Relators all claims asserted on behalf of the United States and Relators against EmCare in the above-captioned actions, except that Relators' claims for a relator's share under the Medicaid State Settlement Agreements which will be separately entered into by EmCare, the States, and the Relators shall not be dismissed, unless they are settled, adjudicated, or otherwise resolved, and any required consent by the United States is obtained, and the Court is so informed.

WHEREFORE, for the foregoing reasons, the Parties respectfully request that the Court enter an order in the form of the attached proposed order.

Respectfully submitted,

**[INSERT SIGNATURE BLOCK OF ALL PARTIES]**

**Attachment E**

**[insert caption for Mason *qui tam* case]**

**PROPOSED ORDER**

AND NOW, this _____ day of _____, 2017, the United States having intervened in this action against defendants Emergency Medical Services Corporation, EmCare, Inc., and their subsidiaries and affiliates (collectively "EmCare") on _____, 2017 (Doc. __), and upon consideration of the Joint Stipulation of Dismissal of Claims Against EmCare entered into by the United States, the Relators and EmCare (Doc. ___), it is hereby **ORDERED** as follows:

1. All claims asserted against EmCare in the above-captioned action based on the Covered Conduct released in the Settlement Agreement (Doc. ___) are dismissed with prejudice as to the United States, and all other claims against EmCare in the above-captioned action are dismissed without prejudice as to the United States;

2. All claims asserted on behalf of the United States and Relators against EmCare in the above-captioned action are dismissed with prejudice as to Relators, except:

   a. Claims the Relators have for reasonable attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d) and analogous state statutes, and under state law for Counts X through XII of the Second Amended Complaint;

   b. Claims the Relators have under 31 U.S.C. § 3730(h), comparable state laws, and under state law for Counts X through XII of the Second Amended Complaint; and

   c. The Relators' claims for a relators' share under the Medicaid State Settlement Agreements to be entered into separately by EmCare, the States and the Relators.

3. The Court shall retain jurisdiction over:

2

a.  the claims of the Plaintiff States and Relators against EmCare for claims that the Relators asserted against EmCare on behalf of the States;

b.  claims the relators have under 31 U.S.C. § 3730(h), comparable state laws, and under state law for Counts X through XII of the Second Amended Complaint;

c.  any claim by Relators under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relators' attorneys' fees, expenses, and costs, unless and until any of the claims in 3.b or 3.c are remanded to another district court pursuant to 28 U.S.C. § 1407(a); and

d.  the United States and Relators' claims against non-settling defendants Health Management Associates, Inc ("HMA"), and the HMA hospitals and subsidiaries named as defendants.

**IT IS SO ORDERED**.

Dated: _____        _____
THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE

2

**Attachment F**

**(insert caption for Meyer and Cowling *qui tam* case)**

**PROPOSED ORDER**

AND NOW, this _____ day of _____, 2017, the United States having intervened in

this action against defendants Emergency Medical Services Corporation, EmCare, Inc., and their

subsidiaries and affiliates (collectively "EmCare") on _____, 2017 (Doc. ___), and upon

consideration of the Joint Stipulation of Dismissal of Claims Against EmCare entered into by the

United States, the Relators and EmCare (Doc. ___), it is hereby **ORDERED** as follows:

    1.     All claims asserted against EmCare in the above-captioned action based on the

Covered Conduct released in the Settlement Agreement are dismissed with prejudice as

to the United States, and all other claims against EmCare in the above-captioned actions

are dismissed without prejudice as to the United States;

    2.     All claims asserted on behalf of the United States and Relators against EmCare in

the above-captioned actions are dismissed with prejudice as to Relators, except Relators'

claims for a relators' share under the Medicaid State Settlement Agreements to be entered

into separately by EmCare, the States and the Relators.

    3.     The Court shall retain jurisdiction over the claims of the Plaintiff States and

Relators against EmCare.

    4.     The Court shall retain jurisdiction over the United States and Relators' claims

against non-settling defendants Health Management Associates, Inc ("HMA"), and its

subsidiaries and Gary Newsome, former Chief Executive Officer of HMA.

**IT IS SO ORDERED**.

Dated: _____

_____
THE HONORABLE REGGIE B. WALTON
UNITED STATES DISTRICT JUDGE